## In the case of PETER COVENHOVEN, a lunatic.

On an inquisition returned finding a person lunatic and of unsound mind at that time, and for five years last past, a third person representing himself to be the attorney in fact of the alleged lunatic, under a letter of attorney executed within that period, and stating that he had transacted business of the alleged lunatic to a considerable amount, and advertised and sold part of his real estate, the alleged lunatic himself having executed and delivered the deeds therefor; and that, by the finding of the inquisition, he, the attorney, is endangered in the contracts entered into by virtue of said letter of attorney—cannot be heard upon petition by him praying that the inquisition may be quashed, or a new commission issued, or a traverse ordered; he is not interested as a purchaser whose title might be affected by the inquisition, neither is he liable as vendor, the lunatic himself having executed the deeds; he has no interest which entitles him to be heard.

A stranger cannot sue out a commission in the nature of a writ *de lunatico inquirendo*, nor can he make himself party to it by application to this court; he has no right to interfere in a proceeding of this nature. The party who seeks to quash the inquisition or traverse the finding of the jury, should have an actual interest, legal or equitable, which would be endangered by the finding of the jury, and that should be manifested to the court; in such cases the application will be granted.

A person found lunatic may appear and traverse the inquisition by attorney, but an idiot must appear before the court in person.

The petition for a commission of lunacy should be accompanied by affidavits, *evincing the lunacy of the party;* this may be, by setting forth the unsound state of the mind of the person against whom the commission is prayed, and mentioning such instances of incoherent conduct or expression, as prove him unfit to continue in the management of his own affairs: so an affidavit setting forth no particular act or expression of the alleged lunatic, from which the court could form an opinion of the propriety of granting the commission, but stating expressly, that for the space of six or seven years last past, the deponent has, by frequently observing the behaviour and actions of the alleged lunatic, looked upon him to be deprived of his reason and understanding, so as to be incapable of the government of himself, and incompetent to manage his own affairs; is sufficient, after inquisition returned, to sustain it as regularly issued.

It is not necessary that the inquest should be held at the dwelling house of the lunatic; if held at a suitable place in the neighbourhood, not so remote as to induce the suspicion of unfair practice, or to preclude the jury from inspecting the lunatic, it is sufficient: in this case the inquisition was held at a public house seven miles distant, and the jury and two of the commissioners went to the dwelling house of the lunatic and inspected him, and it was considered to be within the rule.

It is not necessary that the evidence taken before the jury should be reduced to writing and returned with the inquisition.

Where the lunacy at the time of the inquisition *found is not questioned*, but a traverse is sought to vary the time at which the lunacy commenced, to exempt from its operation a will executed by *the lunatic within the period of* the lunacy, with respect to which the inquisition is not conclusive, it will not be granted.

On the 16th of February, 1830, a commission in the nature of a writ *de lunatico inquirendo*, issued out of this court, directed to Robert McChesney, George Davis, and George Morris, esquires, directing them to inquire into the alleged lunacy of Peter Covenhoven. On the 4th of March the commission was executed, and the jury found that the said Peter Covenhoven was, at the time of taking the inquisition, a lunatic and of unsound mind, and that he had been in the same state of lunacy for the space of five years then last past.

On the 9th of March, Peter Covenhoven, the alleged lunatic, filed in this court a petition, setting forth that the inquisition was taken at least seven miles from his residence, that the jurors found against the weight of evidence, and that he had been informed that the proceedings were subject to several objections. The petition prayed that a new commission might issue, or that he might be allowed to traverse the inquisition already found.

On the same day Peter Gulick filed his petition, setting forth that on the 9th of May, 1825, the alleged lunatic, Peter Covenhoven, constituted him his attorney in fact ; that he has since that time transacted all his business, made his contracts, and sold a part of his real estate ; that by reason of the finding of the jury he is greatly endangered in the matters transacted by him under the said letter of attorney ; that the commission was executed seven miles from the residence of the said Peter Covenhoven, and that the precept to summon the jury was executed by one James Mount, and not by the sheriff of the county ; that proper and competent evidence was overruled or improper evidence received by the commissioners; that the inquisition is against the opinion of eight of the jurors, and against the weight of evidence. This petition prays that the inquisition may be quashed, or that a new commission may issue, or a traverse be ordered.

This case was submitted to the court in April term last.

*J. S. Green,* for the petitioners.

*G. Wood,* contra, for confirming the inquisition.

THE CHANCELLOR. The first question which presents itself, is, whether the petitioners have a right to come before the court and ask relief, and if they have, whether they are properly before the court. And first as it regards the application of Peter Gulick. His claims to be heard in this matter are, that he is the agent and attorney in fact of Peter Covenhoven, and has acted as such from the 9th day of May, 1825, under a regular letter of attorney of that date; that he has transacted the business of the said Peter Covenhoven to a considerable amount, and has advertised and sold a part of the lands—he, the said Peter Covenhoven, executing the deeds therefor; that by the finding of the inquisition, that the said Peter Covenhoven was a lunatic of a period prior to the date of the letter of attorney, he is greatly endangered in the several transactions, contracts and agreements, made and entered into by virtue of the said letter of attorney.

It is clear that a stranger has no right to interfere in a proceeding of this nature. He can neither sue out a commission, nor can he make himself a party to it by any application he may make to this court. I take it to be equally clear, that when a person has actual interests either equitable or legal, which are affected by the inquisition, he may apply to this court for relief. In England, this right is generally considered to be founded on the statute of 2d *Edw.* 6, *c.* 8, which provides, that if any are untruly found lunatic or idiot, *any person or persons grieved* by any such office or inquisition, shall or may have his or their traverse to the same, &c. That statute has never been re-enacted in this state, and I am not aware that it was in use in the colony previous to the revolution, so as to be considered part of the law in force at the time of adopting the constitution: nor do I consider it material; the right may exist independent of any statute. Proceedings upon an inquisition of lunacy are exparte; and although they are not conclusive as to the rights of third persons, yet, when those rights are affected by the inquisition, it is equitable and just that the party aggrieved should have an opportunity of being heard in such mode as may best comport with justice and the rights of all interested. It may be of the utmost importance to alienees and others holding interests under a person who is found to be a lunatic, to have the question definitely and speedily settled. The inquisition is always *prima facie* evidence, and it would be inconvenient and unjust

April, 1830.

Case of
Covenhoven.

that those whose fortunes might depend on the issue of a full investigation, should be compelled to wait in uncertainty, with a cloud hanging over them, until the death of witnesses and the loss of testimony rendered defence hopeless. But the party who seeks to quash the inquisition, or traverse the finding of the jury, should have an actual interest, either legal or equitable, and that should be manifested to the court. What in this case is the interest of this petitioner? He has acted as the agent of Peter Covenhoven, under a power of attorney, and as such agent has transacted business to considerable amount. In what situation that business is at this time, does not appear. It is not stated that any settlements have taken place between the petitioner and the alleged lunatic which will be invalidated, or that in consequence of such settlements, vouchers have been destroyed or cancelled, so as to render it impracticable for this agent to account with any one save the alleged lunatic himself. If the accounts of this agency are still unsettled, there is no reason shown or assigned, why such accounts may not be as fairly and equitably adjusted with a committee or guardian as with Peter Covenhoven. I do not see that the fact of Gulick having transacted business for Peter Covenhoven to a considerable amount, even under a power of attorney, which, according to the finding of the jury, was executed after Covenhoven became of unsound mind, can of itself create such an interest as to authorize an interference on his part. But again, he states that he has advertised and sold part of the lands of Peter Covenhoven to different persons, he, the said Peter Covenhoven, having executed the deeds therefor. If the purchasers were before the court on petition to be heard, alleging that their possessions and titles were jeoparded by this exparte inquisition, it would present a very different case, and might be a proper one for relief. But Gulick is not a purchaser. Is he the vendor? He advertised and sold; but on his own showing it appears that the purchasers were willing to take the deeds from Peter Covenhoven himself. They trusted to his personal covenants and warranty, and so far from being dissatisfied with the proceedings lately had, they have caused to be presented to the court, rather informally it is true, a written request that the inquisition might not be disturbed on the ground of their purchase. How then Gulick is to be endangered, as he alleges, in the several transactions, contracts and agreements made and entered into by

virtue of the said letter of attorney, is not perceived by the court.

In the case *exparte Roberts*, 3 *Atk.* 5 and 308, it is laid down by Lord Hardwick, that the alienee of the lunatic may traverse the inquisition, but he shall be bound by the traverse. In *exparte Morley*, Lord Rosslyn held the same doctrine; and in *exparte Hale*, 7 *Ves. jr.* 261, Lord Eldon held that a *bona fide* owner in equity of two advowsons under contract might traverse an inquisition, finding that the party with whom he contracted had been a lunatic ten years before. In *exparte Ward*, 6 *Ves.* 579, the same chancellor, being asked to dismiss an application to traverse an inquisition on the ground that it was made by an entire stranger without any interest, rather declined expressing any positive opinion; but admitted that such a case was not within his recollection. On the other hand, Lord Thurlow, in the matter of *Fust*, 2 *Cox*, 418, denied a traverse to the husband of the alleged lunatic, there being circumstances connected with the case that rendered the validity of the marriage doubtful. It was well remarked by the court in that case, that great care should be taken that the general object of the proceedings under a commission should not be disappointed by such application. Taking all the cases together, it is fairly to be inferred, as I think, that applications on the part of third persons in matters of this nature are not encouraged, yet that they will be listened to and granted when actual *bona fide* interests and rights are endangered. Considering as I do, that Peter Gulick has not placed himself in this situation before the court, his petition must be dismissed; and in making this order, it is a matter of satisfaction to know, that if I should have mistaken the law upon the subject, the rights of the petitioner are not concluded, and also, that as to him the inquisition was not in fact an *exparte* proceeding, but that he attended before the jury and there had the benefit of witnesses and counsel.

To the petition presented by Peter Covenhoven, the alleged lunatic, it is objected that he cannot appear by attorney, but must appear in his own proper person before the court, so that the court may judge whether he is able to present a petition. This objection appears to me not well taken. In *exparte Roberts*, 3 *Atk.* 5, *Smithie's case in* 1728 is referred to; it was a motion for leave to traverse by attorney, and was opposed on the ground that the tra-

verse must be in propria persona: on searching precedents many cases were found where a lunatic had so traversed, but none in which the same privilege had been accorded to an idiot; and that being the case of an idiot, it was accordingly ordered that she appear in person. In *ex parte Cragg*, and *ex parte Ferne*, 5 *Ves. jr.* the wife who had been found a lunatic, joined with her husband in a petition for a traverse of the inquisition, and it was granted as being matter of right under the statute of Edward.  In *Windell's case*, 1 *John. C. R.* 600, a traverse was ordered on the petition of the lunatic, without his being brought into court for inspection.  In 1 *Collinson on idiots*, 171—2, the English cases are all collected, and the result of them is, that an idiot must appear in person, but a lunatic may appear by attorney.  The reason of the distinction, as given by Collinson, is, that it was supposed idiocy might be discerned. I can see no use or propriety in bringing the lunatic before the court at this stage of the proceedings, merely to judge of his capacity to present a petition.  No other end could be answered by it; for if upon such inspection the court should suppose there was no foundation for the finding, it would have no power to set it aside. The testimony of respectable persons, who have long known the lunatic, and been in the habit of noticing the movements of his mind, or of physicians who have been accustomed to watch the symptoms of the most distressing of all human maladies, can scarcely fail to be more satisfactory than an inspection by the court.  Considering then the application properly before the court, let us inquire into the ground of the complaint.  And first, the petitioner seeks to *quash* the inquisition on the ground of irregularity.

He contends that the affidavits on which the commission issued are insufficient, and not within the rule of the court.  The general rule on this subject is, that the petition should be accompanied by affidavits setting forth the unsound state of mind of the person against whom the commission is desired, and mentioning such instances of incoherent conduct or expression as prove him unfit to continue in the management of his affairs, 2 *Collins.* 151. In 2 *Madd. Chy.* 569, it is said the petition must be accompanied by affidavits *evincing the lunacy of the party ;* and this is the language of our rule of 1817.  The court ought, in all cases, to be satisfied of the propriety of granting the commission ; and to

be satisfied, too, in the mode prescribed by its own rule. One of the affidavits in the present case does not, perhaps, come quite up to the letter of the rule. It sets forth no particular act or expression of the alleged lunatic, from which the court might be enabled to form some opinion of the propriety of granting the application ; but the deponent swears expressly, that for the space of six or seven years last past, he has, by frequently observing the behaviour, words and actions, of the said Peter Covenhoven, looked upon him to be deprived of his reason and understanding, so as to be incapable of the government of himself, and incompetent to manage his affairs. The practice under our rule has not been uniform. Some have considered that the affidavits, in order to evince the lunacy of the party, should set forth particular instances of incoherent conduct or expressions ; while others have deemed it an unnecessary formality. No evil has ever resulted from this laxity of construction. I incline to think the affidavits are sufficient, as being within the spirit of the rule, and according to the general practice of the court ; and if they were not, I should feel unwilling at this stage of the proceedings to quash an inquisition by which the affidavits themselves are entirely confirmed.

Again, it is contended, that the inquest should have been held at the house of the lunatic. It appears that it was held at a public house about seven miles distant, and that the jury and two of the commissioners went to the house of the lunatic, and there inspected him. The cases adduced in favor of this proposition do not support it : it is not the practice, neither is it the law. A commission may issue against a person who is abroad and beyond seas : *Exparte Southcot,* 2 *Ves. sen.* 401 : but it must be executed in the place where he formerly resided. In that case Lord Hardwick is not understood by the court as saying, that the commission must be executed at the mansion house ; but that the mansion house shall determine the place of residence, and wherever the residence is, in that county the commission must be executed. So he was understood by Lord Eldon, in *Baker's case,* 19 *Ves.* 340 ; (better reported in *Coop.* 205.) He notices with approbation the dictum of Lord Hardwick ; but, instead of ordering the commission in that case to be executed at the mansion house of the lunatic, the order was that it should be executed in Devonshire, which was the county where the mansion house was situated. In 2 *Collins. on idiots and lunatics,* 163, there is the

**4**

form of a precept to the sheriff to summon a jury to come before the commissioners to inquire of the lunacy of *A. B.* The sheriff is directed to convene the jury at the house of Martha Briston, situated at Hackney, in the parish of Hackney, in the county of Middlesex, and known by the name of the *Mermaid tavern ;* to inquire whether A. B. residing at Whitmore house, in the parish of Hackney, in the county of Middlesex, be a lunatic or not ; evidently showing that the inquisition was not taken at the mansion house. There is great propriety in having the commission executed near the place of actual residence. The jury and commissioners 'should have it in their power to inspect the lunatic if they should see fit to require it, and the rights of all parties are better subserved by an investigation in the neighborhood than elsewhere ; but there is no necessity that the inquest should be held at the dwelling house of the lunatic. It may ofttimes be inconvenient, and sometimes improper. If it is held at a suitable place, not so remote as to induce the suspicion of unfair practice, or to preclude the jury from an inspection of the lunatic, it is sufficient. The case now before the court is within this rule, and the objection taken on this ground cannot be supported. Nor is there any thing in the ground taken by the counsel of the lunatic, that the evidence before the jury was not reduced to writing and returned with the inquisition. The practice as well in England as in this country is different, and I do not know of any instance where it has been done. On a careful consideration of all the reasons assigned for quashing the proceedings, I am of opinion that they are not sufficient, and that the prayer of the petitioner in that behalf cannot be granted.

The only question that remains is, whether Peter Covenhoven, the alleged lunatic, shall be allowed to traverse the inquisition. This must depend on the sound discretion of the court, under all the circumstances.

It is not pretended by any one that Peter Covenhoven was not at the time of taking the inquisition of unsound mind, and incompetent to the management of himself and property. The petitioner himself does not allege it ; nothing of the kind is hinted at in the depositions of Mr. Alexander or Mr. Morford. The difficulty appears to be this, that in the month of August, 1825, Peter Covenhoven executed a last will and testament ; whereas by the inquisition it is found that as early as March, 1825, he was of unsound mind ;

and the object is to get rid of that part of the finding which might have a tendency to invalidate the will. Alexander and Morford both state that they were subscribing witnesses to the will ; and Mr. Alexander testifies, that at that time he did not consider him a lunatic. Mr. Morford states, that he considered him of " good and disposing mind and memory :" and under those impressions they attested the will. If evidence had been adduced before the court, to raise a reasonable doubt of the man's being a lunatic at the time of the inquisition taken, I should feel willing to order a traverse. No man should be deprived of his liberty and property upon the ground of incapacity to manage his concerns, until the fact is established to the satisfaction of every intelligent mind. But, the only effect of a traverse in this case, would be a contestation about the period when the lunacy or unsoundness of mind commenced. And the question may well be asked, *Cui bono ?* Would it restore Peter Covenhoven to his liberty or property ? Would the legatees or devisees under the will be bound by it, if the second finding should be like the first ? If the first finding should be set aside in this respect, would it prevent the necessity of proving the will, and thereby avoid litigation at that period, whenever it may happen ? If either of these results would follow, the path of duty would be plain, and the court would take pleasure in pursuing a course that would terminate all difficulties. As it is, I do not feel myself at liberty to put the estate of the lunatic to the expense of a traverse, which can be of no benefit to the lunatic himself, *and which the court has no power to make conclusive on the rights of others.* It is worthy of remark, too, that all the children and family of the lunatic, who would most likely be interested in sustaining the will, are satisfied with the inquisition. If strangers should claim under the will, their rights are not concluded. The inquisition is competent evidence, it is true ; but the whole question is open ; and when it shall be considered that the jury have gone back for a period of five years ; that some of them did not concur in the finding, and that the persons who may then claim had no opportunity of being present at the taking of the inquisition, and having no existing rights, were consequently not entitled to a traverse, the evidence furnished by the inquisition itself will have but little weight before an intelligent tribunal.

Let the inquisition be confirmed.