In re EDWARD J. CLIFFORD, alleged to be a lunatic.

[Filed October 10th, 1898.]

1. The issuance of a commission of lunacy is a matter of judicial discretion.

2. Such a commission will not be issued in behalf of a man alleged to be a lunatic, who has no estate and who is incarcerated in a well-appointed prison under conviction of murder in the first degree, punishable with death.

---

On application for commission of lunacy.

*Mr. Warren Dixon* and *Mr. John P. Stockton, Jr.,* for the application.

THE CHANCELLOR.

The object of issuing a commission of lunacy is that the chancellor may ascertain whether the person alleged to be a lunatic shall be allowed to exercise acts of dominion over his person and property, or whether his person and estate shall be taken into custody for the benefit and safety of both.  *Shelf. Lun. 103.*

It is the practice of the chancellor, in entering upon the exercise of his jurisdiction in a matter of this kind, to be first satisfied that the case presented to him is one that merits his interference—that is, one where the alleged lunatic has an estate to be cared for, or is personally, if insane, so situated as to need

the intervention sought, for his security and care within the rights he is entitled to under the law, and one in which the affidavits annexed to the petition for the commission, make a *prima facie* case of the lunacy necessary to invoke the action sought. The application is to judicial discretion. Those who are interested in the lunatic cannot demand the issuance of the commission as a right. *In re Chattin, 1 C. E. Gr. 496.* It is obvious to reason that if the lunatic and his property be within safe and lawful custody, as, for instance, where an infant lunatic is well cared for in body and estate by a competent guardian, a commission will not issue. *Shelf. Lun. 91.*

If a commission issue and lunacy be found, the next step is to put the care of the lunatic and his estate in the hands of a guardian. But the proceedings cannot change the legal *status* of the lunatic so as to relieve him from imprisonment if he be held for crime. Nor will the finding of lunacy warrant the criminal courts in releasing him from imprisonment into the hands of his guardian. It is obvious—when it is considered that under the commission the inquiry is not as to the entire extent of the lunacy but merely whether it is enough to justify the taking from the subject of the inquisition his power to control himself and his estate—that the result of the inquisition cannot be relied upon in any inquiry as to criminal responsibility. *Hale P. C. 33.*

In the present case counsel frankly admits that Edward J. Clifford is in prison, under conviction of murder in the first degree. He has no property. His person is well cared for. By the judgment of a lawful and competent court he has lost his right to freedom, and must, for the present at least, remain where he is. If the chancellor enters upon this matter no benefit can result to Clifford, for he has no estate to be cared for and his person must remain where it is, under control of the law. Under such circumstances I perceive no sufficient reason to now exist why this application should be granted. If hereafter the circumstances shall change so that the man shall be discharged from the custody of the law and need the chancellor's care, the application may be renewed.

I will deny the application.