I have before me the petition of one Bernhardt Jensen who prays for the issuance of a commission in the nature of a writ delunatico inquirendo to explore and determine the alleged lunacy or mental incompetency of Lucy Sekel. R.S. 3:7-35; N.J.S.A.3:7-35.
The three paragraphs of the petition containing all of the factual allegations are as follows:
"1. The petitioner is the County Adjuster of the County of Middlesex in the State of New Jersey.
"2. Lucy Sekel of the Township of Madison in the County of Middlesex is now and for the space of ten months last past and upwards has been so far deprived of her reason and understanding that she is rendered altogether unfit and unable to govern herself or to manage her affairs, as by the affidavits hereto annexed appears.
"3. The interest of your petitioner as County Adjuster of the County of Middlesex in the State of New Jersey arises by reason of the fact that the County of Middlesex aforesaid may be obliged to assume the burden of the cost and maintenance of the said Lucy Sekel at the New Jersey State Hospital for the Insane at Marlboro, New Jersey, to which hospital she has been admitted and where she is now confined." *Page 368 
It is immediately observed that the petition is not addressed to the Chancellor by any relative of the alleged lunatic. Caseof Covenhoven, 1 N.J. Eq. 19. Nor does the petitioner aver that the alleged lunatic has no near relatives and that if there are persons remotely related to her, they are unknown. I understandex curia such to be the fact.
In a recent application entitled In re Oswald, 132 N.J. Eq. 325; 28 Atl. Rep. 2d 299, Vice-Chancellor Stein, upon reviewing the pertinent authorities, expressed the conclusion that: "The jurisdiction of the Chancellor to order an inquisition into the sanity of an alleged incompetent is strictly limited to the terms of this statute as `heretofore' practiced. It has never been applied so as to permit the issuance of a writ de lunaticoinquirendo upon the application of a mere stranger and it may not be so applied."
The present petition projects the question whether in certain circumstances the Chancellor can favorably entertain an application presented officially by the county adjuster of the county in which the alleged incompetent is a resident.
Basically, in all these applications the Chancellor in entering upon the exercise of his jurisdiction must first be satisfied that the case submitted to him is one that merits his interference. In re Clifford, 57 N.J. Eq. 14; 41 Atl. Rep. 356.
The affidavits accompanying the petition disclose that Mrs. Sekel is 76 years of age. Her mental infirmity is classified as senile psychosis, and she has been continuously confined in the New Jersey State Hospital at Marlboro, New Jersey, since September 27th, 1946. Her alleged mental inability to manage and conduct her affairs seems to rest upon a plausible basis.
Although it is not made evident by the petition or attached proofs, I am told that the alleged incompetent has a bank account of $2,370.26 at the Farmers and Merchants National Bank at Matawan, New Jersey, which it is apprehended she might in her mental state dissipate or improvidently disburse. Although the recommended form of petition does not contain such an allegation except perhaps inferentially (2 Kocher Trier, form 1490), it seems to me that in proceedings of this nature the petition or an accompanying affidavit should reveal that the alleged lunatic has an estate *Page 369 
which in the existing conditions reasonably requires some custodial supervision.
I have alluded to the actual circumstances capable of being asserted in support of the instant application. Can the Chancellor within the orbit of such proceedings "as heretofore practiced" act upon the petition of the county adjuster?
It is intimated that in this instance the county adjuster represents a creditor, the County of Middlesex. See Dick. Ch.Prec. (rev. ed.) 639 note a; Shelford, Lunatics, c., [*]93;obiter, In re Rhodes, 100 N.J. Eq. 370, 373; 136 Atl. Rep. 408.
The allegation of the petition "that the County of Middlesex aforesaid may be obliged to assume the burden of the cost and maintenance of the said Lucy Sekel * * *" seems to negative the inference of any present direct indebtedness of the inmate to the county. However, an initial contingent liability immediately falls upon the county from which any patient is committed. R.S.30:4-73; N.J.S.A. 30:4-73, as amended P.L. 1942 ch. 250 p. 679§ 1.
The legislature describes the county adjuster as the "official of that designation authorized to act in cases of commitment or admission of insane persons to state or county hospitals for the insane." R.S. 44:1-1; N.J.S.A. 44:1-1.
The obligation of the county adjuster to inquire into the indigence and legal settlement of the patient is manifestly indicative of his duty to protect the county from an unwarranted liability for the cost of the patient's institutional maintenance. R.S. 30:4-44; N.J.S.A. 30:4-44. I note also the statutory power sought to be conferred upon this court to appoint presumably at the instance of the county adjuster a guardian of the estate of the patient, with authority to pay the cost of the maintenance of the patient in the institution. R.S. 30:4-65;N.J.S.A. 30:4-65.
The Chancellor is the general guardian of all lunatics. A proceeding for a commission of lunacy is not only prosecuted in the interest of the person alleged to be of unsound mind but also in the interest of the public.
An inquiry into the origin and history of lunacy proceedings will reveal the primitive and inveterate interest of the sovereign (state) in the preservation of the estates of idiots *Page 370 
and lunatics. As early as 1324 (17 Edw. II, c. 9) there was a statute in England which provided "that the King shall have the custody of the lands of natural fools (idiots), taking the profits of them without waste or destruction, and shall find them in necessaries, of whose fee soever the land be holden." The same statute (c. 10) operated to constitute the King a trustee of the lands and tenements of lunatics. Beverley's Case, 4 Coke127a; 1 Bl. Com. c. 8 § 18. That English statute apparently endured until 1863. Ordromaux, Jud. Aspects of Insanity 4.
Under the earliest procedure the suggestion of the lunacy was communicated to the King by a petition whereupon he issued the writ or commission to inquire into the fact. Fitzherbert, DeNatura Brevium 232; Shelford, Lunacy 14. Subsequently, authority to issue the commission was conferred upon the Lord Chancellor.Re Brown, 1 Abb. Prac. (N.Y.) 108, 109.
The history of the practice discloses that such commissions were frequently issued by the Chancellor upon information of the Attorney-General and also upon the application of the Solicitor of his Majesty's Treasury. 1 Coll. on Lun. 125, 377. Such was the law that came to us. Here the prerogative of the King became vested in the people, and its exercise has been confided to the Chancellor.
I am convinced that our Chancellor has always possessed the power to recognize and act upon the petition of a public officer who in furtherance of his official duties inaugurates such proceedings to conserve the estate of the incompetent who is actually confined in a public institution, to the end that the financial interests of the state or its subdivision may be protected from an unnecessary and reasonably apprehended loss. It is also perceivable that in most, if not in all, of such cases the appointment of a guardian if justified will likewise be conducive to the more comfortable welfare of the patient.
If counsel for the petitioner will amend the petition to embrace an averment of the additional facts to which I first made reference and which I understand to be true, I will advise the desired order. *Page 371