175 N.J. Super. 614 (1980)
421 A.2d 610
IN THE MATTER OF JANE TIERNEY, AN ALLEGED MENTAL INCOMPETENT.
Superior Court of New Jersey, Law Division Probate Part, Somerset County.
Decided April 25, 1980.
*616 Roger A. Beeman for plaintiff Marie Sayer (Roth, Beeman & Savage, attorneys).
*617 Francis X. Hermes for defendant (Wharton, Stewart & Davis, attorneys).
MEREDITH, J.S.C.
This action comes to the court by way of a complaint entered by Marie Sayer who petitions the court to adjudge Jane Tierney mentally incompetent and grant complainant letters of guardianship. Ms. Tierney has in turn entered a motion to dismiss the incompetency action.
Jane Tierney is 55 years old, an only child of parents now dead. She has never married. She has no aunt or uncle living; apparently six elderly cousins survive. On September 15, 1975 Ms. Tierney was seriously injured in an automobile accident and was as a result hospitalized for many months in the Mercer Medical Center, the Morris Hall Rehabilitation Center and the Kessler Rehabilitation Center. Because of her physical disabilities she still resides in a convalescent home. In June 1979 Ms. Tierney participated in a civil trial in which a jury awarded her $400,000 for personal injuries she suffered as a result of the automobile accident. Ms. Tierney's present assets amount to $405,487.
Plaintiff Marie Sayer, according to her affidavit, was a childhood friend of Ms. Tierney and over the years has assisted the latter with her personal and financial affairs. In January 1978 Ms. Tierney executed a power of attorney to plaintiff and plaintiff's husband. Ms. Sayer presently has control of Ms. Tierney's entire assets which include stock certificates and bank books. Plaintiff is in no way related to Ms. Tierney. Neither is Ms. Tierney in any financial or legal manner obligated to plaintiff. Ms. Sayer does not have any right, title or interest either equitable or legal in Ms. Tierney's assets. (Plaintiff is, however, the principal beneficiary of Ms. Tierney's last will and testament.)
On February 13, 1980, having become concerned that her affairs were not being properly handled, Ms. Tierney executed a power of attorney to her present counsel. It was and is her *618 intention to establish with counsel's assistance an inter vivos trust for her own care and maintenance. Plaintiff has refused to honor the revocation of her own power of attorney over Ms. Tierney's assets and has refused Ms. Tierney's request that $2,500 be paid from those assets to the latter's attorney.
On February 19, 1980 plaintiff filed this complaint. On that same day Ms. Tierney filed in the Chancery Division a complaint which requests the court to direct Ms. Sayer to turn over to Ms. Tierney's attorney all records and accounts of her assets. That proceeding has been stayed pending the outcome of the present action.
After an initial determination that the complaint and medical affidavits submitted by plaintiff do, on their face, bring into question Ms. Tierney's soundness of mind, the court ordered this action be set down for a hearing and that notice be given to the proper parties, pursuant to R. 4:83-4. Briefs have been submitted by both sides. Plaintiff submits that Ms. Tierney is a mental incompetent and as a result cannot govern herself. Ms. Tierney insists that despite her physical disabilities she is of sound mind and is capable of managing her own affairs.
Before reaching the substantive issue of incompetency, the court has considered the question of plaintiff's standing, also raised by Ms. Tierney's counsel. The court concludes that Marie Sayer is not a proper plaintiff to initiate a determination of the incompetency of Jane Tierney and the complaint must therefore be dismissed.
It would appear at first blush that the question of who may institute an incompetency proceeding is answered simply by reference to In re Oswald, 132 N.J. Eq. 325 (Ch. 1942). There it was held that a judicial determination of a person's mental incompetency may not be made upon the application of a "mere stranger": Chancery had only statutory jurisdiction over "lunatics," and the pertinent statutory provision, N.J.S.A. 3:7-35 (now repealed), prohibited the exercise of that jurisdiction upon the petition of a "stranger." The court found that petitioner in that case, who claimed to be a friend of the alleged incompetent (as *619 does plaintiff in the present action), was nevertheless a "stranger to Mrs. Oswald in the eyes of the law." Id. at 326.
In addition to Oswald, supra, the only reported New Jersey case which directly addressed the issue of a proper plaintiff in mental incompetency proceedings,[1] there is a long line of earlier cases in which the New Jersey Chancery Court addressed the standing issue in dicta. See, e.g., In re Covenhoven, 1 N.J. Eq. 19 (Ch. 1830). It is in Covenhoven, according to the Oswald opinion, that "the limitation upon the Chancellor's power in this regard (that is, to entertain an incompetency action upon the application of a mere stranger) was first pointed out in this state ..." Oswald, supra, at 329.
Covenhoven, supra, ruled (among other things) that an attorney for the alleged incompetent, who also held his client's power of attorney, did not have sufficient legal or equitable interest to intervene in the incompetency proceedings. The court wrote in dictum, "It is clear that a stranger has no right to interfere in a proceeding of this nature. He can neither sue out a commission, nor can he make himself a party to it by any application he may make to this court." 1 N.J. Eq. at 21.
In In re Frankish, another case cited in the Oswald opinion, the court, again in dictum, explained that a "stranger" cannot initiate an incompetency proceeding as to another person: "Only relatives who are interested in the welfare of the lunatic may do this." 86 N.J. Eq. 280, 285 (Ch. 1916).
In re Rhodes, 100 N.J. Eq. 370, 373 (Ch. 1927), a 1927 Chancery Court opinion, expanded the category of those who could bring an incompetency action: "While a near relative of the alleged lunatic is the proper person to institute lunacy proceedings," creditors may petition the court "for a commission against their lunatic debtor," and in some instances strangers may enter such a petition upon information by the Attorney General. The nature of that information was not explained. And in In re *620 Sekel, 140 N.J. Eq. 367, 370 (Ch. 1947), a much more recent case, it was explained that the Chancellor also has the power to act upon a petition of a public officer in order to conserve the estate of an alleged incompetent confined in a public institution.
Since 1947 there has been only one reported case in which the issue of a cognizable plaintiff has been touched upon. In In re Schiller, 148 N.J. Super. 168 (Ch.Div. 1977), the court was petitioned by a hospital to determine the mental capacity of a patient to give consent for a necessary surgical procedure. Judge Dwyer, citing Oswald, supra, summarized the general rule that "The complainant [in an incompetency proceeding] must be a relative, creditor, or perhaps have a relationship founded upon contract, trust or confidence, but a stranger may not [make an application]." At 179, n. 3. Again in note 4, the court reiterated that its jurisdiction in such matters is purely statutory; in the absence of a proper plaintiff, it had no inherent power to determine mental incompetency. At 180, n. 4.
Plaintiff in the instant case is neither relative nor creditor nor does she have with Ms. Tierney a relationship based on contract, trust or confidence. Plaintiff is a "mere stranger" to the person whom she is seeking to have declared incompetent. Based on the holding in Oswald, supra, and the dicta in other reported cases, some of which are cited above, Marie Sayer may not be recognized as a proper plaintiff in this proceeding.
Plaintiff suggests, however, that since Oswald et al. were grounded on statutory law which has since been repealed, that opinion and its progenitors are no longer the law of this State. Plaintiff argues that the ancient procedural restrictions memorialized in Oswald no longer preclude the court, as presently constituted, from invoking its broad equity jurisdiction in order to reach the substance of the incompetency determination.
Because of the constitutional, statutory and rule changes since 1942 related to the procedural rules which govern actions to determine mental incompetency, the court believes that a full and up-to-date analysis is necessary in order to properly determine the standing issue raised here.
*621 The common law predecessor, in England and colonial America, of the action to determine mental incompetency, presently outlined in R. 4:83-1 et seq., was the writ de lunatico inquirendo or a commission in the nature of such a writ which upon petition might issue from the Chancellor. Lindsley's Case, 44 N.J. Eq. 564 (E. & A. 1888); 6 N.J. Practice (Clapp, Wills and Administration) (3 ed. 1962), § 743 et seq.
As early as 1794 the New Jersey Legislature confirmed in the Chancellor (at that time the Governor) that jurisdiction over the persons and property of idiots and lunatics, which power had in pre-revolutionary times been accorded the Chancellor in his role as a surrogate of the English King. In March 1804, in a supplement to the 1794 act, the Legislature provided by statute that the procedure to be followed in the determination of idiocy or lunacy would be that "heretofore [that is, before 1804] practiced". In re McLaughlin, 87 N.J. Eq. 138, 140 (Ch. 1916-1917); In re Farrell, 51 N.J. Eq. 353, 359 (Ch. 1893).
The rather vague directive that commissions and writs should issue according to the existing practice remained part of the language of the pertinent statute until 1952. Its most recent form, N.J.S.A. 3:7-35 provided:
Except as otherwise provided by law, the question whether a person is a mental incompetent shall be determined by an inquest upon a commission to be issued out of the court of chancery and returnable thereto, and proceedings thereon shall be as heretofore practiced, in proceedings de lunatico inquirendo and in the nature of de lunatico inquirendo. [Emphasis supplied]
The courts in New Jersey from the earliest days have assumed that the applicable procedural restrictions, "as heretofore practiced," included, among other things, the general rule that a person with no actual legal or equitable interest may not initiate proceedings to determine another's mental incompetency. According to the Chancellor in Oswald, supra:
Neither the English Parliament before the American Revolution nor the New Jersey legislature since that time has granted to the Chancellor the power to issue a writ de lunatico inquirendo upon the application of a mere stranger and no such practice has heretofore been countenanced. [132 N.J. Eq. at 329].
However, there has never been any statutory explanation or definition as to the nature of the procedure "heretofore practiced."
*622 In 1952 the Legislature substantially revised Title 3; N.J.S.A. 3:7-35 was repealed and not re-enacted in the new Title 3A. Herein lies the nub of the question in the present case: Does the repeal of the statute which described, however vaguely, the procedure to be followed in incompetency actions signal the general abandonment of those procedural rules that have had effect for centuries? This court is of the opinion that the answer must be in the negative.
Firstly, the revised statutes do describe, again by reference, the procedural rules which must be followed in actions to determine incompetency. N.J.S.A. 3A:6-35 provides:
In civil actions ... for the determination of mental incompetency ... the trial of the issue of mental incompetency may be had without a jury pursuant to rules of the supreme court, unless a trial by jury is demanded by the alleged mental incompetent or someone in his behalf. [Emphasis supplied]
R.R. 4:102-1, part of the then court rules to which the statute referred, required that the complainant in an incompetency proceeding state his relationship to the alleged incompetent and, if not spouse or next of kin, his interest. Obviously such requirement reflects and substantiates the general rule that a proper complainant must be a relative or a person with a legal or equitable interest in the subject of the action. The court is persuaded that the Legislature and our Supreme Court intended, by way of N.J.S.A. 3A:6-35 and R.R. 4:102-1, to continue those standing restrictions that had been followed since pre-revolutionary times.
The present court rules which pertain to incompetency actions, R. 4:83-1 et seq., use the same language, somewhat contracted, as that in R.R. 4:102: R. 4:83-1 requires that the complainant state his or her relationship to the alleged incompetent and his or her interest in the action. Again, the rule reflects, more simply, those standing restrictions and limitations of the court's power long iterated in the common law of this State.
Secondly, it was long ago settled that English case law and statutes decided or enacted before the American Revolution and practiced in New Jersey before 1776 constitute a part of the *623 common law of this State and remain in force until altered by the Legislature or modified by the court. N.J.Const. (1776), Art. XXII; Scudder v. Trenton Delaware Falls Co., 1 N.J. Eq. 694 (Ch. 1832); Breen v. Peck, 28 N.J. 351 (1958).
In order for a statute to supercede or nullify the common law it must contain some express or specific statement to that effect. State v. Western Union Tel. Co., 12 N.J. 468, 486 (1953), app. dism. 346 U.S. 869, 74 S.Ct. 124, 98 L.Ed. 379 (1953); Long Beach Tp. v. City of New York, 445 F. Supp. 1203 (D.C.N.J. 1978). Obviously mere failure to reenact N.J.S.A. 3:7-35, especially in light of the language of the more recent N.J.S.A. 3A:6-35 and the court rules, cannot be construed as an intentional negation of the standing requirements which are ensconced in the common law.
Finally, it has been said that each time a rule of common law is applied it should be "carefully scrutinized to make sure that the conditions and needs of the time have not so changed as to make further application of it the instrument of injustice." State v. Culver, 23 N.J. 495, 505 (1957). Generally, the courts of this State have not hesitated to reshape the common law "to new thinking as well as to new conditions, when impelled by a strong sense that justice and the public welfare required it." Koplik v. C.T. Trucking Corp., 47 N.J. Super. 196, 203 (App.Div. 1957), rev'd on other grounds 27 N.J. 1 (1958).
The public policy which gave birth to the standing requirements as to incompetency actions is clearly to protect individuals from unwanted interference in their affairs; to shield an individual from the necessity of defending himself or herself from frivolous or insidious incompetency charges. It is the opinion of this court that the general need for such protection has not diminished; certainly the situation presented in the instant case does not call for modification of the standing requirement.
One can imagine that there are instances where a person with no family, who cannot manage to take care of himself or herself, might be denied by the standing requirements the *624 benefits of a guardian's assistance and the assurance of proper care. See In re Schiller, 148 N.J. Super. at 179, n. 3. The instant case, however, does not present such a situation. Jane Tierney is institutionalized; presumably she is adequately cared for. She has sufficient assets to provide for her continued institutionalization if that is necessary. She has made arrangements with her attorney to set up an inter vivos trust which would insure her future maintenance in any case. In no sense is the court, in dismissing this incompetency action, "abandoning" Ms. Tierney or denying her proper care.
NOTES
[1] The Chancellor in Oswald wrote that neither he nor counsel had found any other reported instance in the state of an "outright application by a stranger." 132 N.J. Eq. at 329.