The Chancellor.
The petitioner, who is the alleged lunatic, asks that the inquisition taken may be set aside, and a new commission issued; or in case this should be refused, that he may be permitted to traverse the inquisition.
There are several reasons assigned in the petition for setting aside the inquisition. I will examine them briefly in their order.
First. Because there was not sufficient notice given to *190 the petitioner of the time and place of executing the commission.
The alleged lunatic has a right to be present at the execution of the commission, to make his defence by himself or counsel, and to examine witnesses. The effect of a finding against him is to deprive him of the control of his property and of his personal liberty. Such consequences cannot follow, except upon the verdict of a jury; and no such verdict should be permitted to pass against any man without affording him an opportunity of defending himself, except in extreme cases, when such notice would be nugatory. In eases of confirmed and dangerous madness it may be dispensed with, but then only by the express order of the court. Russel’s case, 1 Barb. C. R. 39. In the case of Whitenack, 2 Green’s C. R. 252, it was decided that reasonable notice of the time and place of taking of an inquisition of lunacy should be given to the alleged lunatic; and that the want or defect of notice is not aided by his appearing before the jury, and attempting a defence. The specific time to which the party is entitled to notice is not fixed by any rule or by the practice of the court. It must be a reasonable notice, such as will give to the party a fair opportunity of preparing his defence. If the notice in the particular case has been so short as actually to deprive the petitioner of this opportunity, he ought not to be concluded by a finding against him.
In this case the venire was issued on Friday, the fifth of May, returnable on the following Tuesday. Notice was served on the petitioner the day after the venire was issued. This notice was entirely insufficient, and would be deemed so even without an affidavit showing that the party had been prejudiced by it. But on the ninth of May, the petitioner appeared by counsel. No objection was made to the notice, and, by mutual consent, there was an adjournment to the 17th of May. The petitioner, by his counsel, having consented to the adjournment without making any' objection to the notice, thus fixed his own time, and *191 ought not now to he permitted to avail himself of the insufficiency of the notice, unless the court can see that, through some inadvertence or mistake on his part, the petitioner has, hy the limited time aiforded him for preparing his defence, been prejudiced at the hearing. Mr. Sheppard, his counsel, swears that he verily believes that had the said Daniel Vanauken had a longer time to prepare his defence than the two days that was given him, he could have made a more successful defence before the jury; and he judges so from facts that have come to his knowledge since the trial, and from information that he has received from the said Daniel Vanauken, in talking with him since the trial, blow the notice was served on the sixth of May, and the hearing commenced on the 13th of that month, so that instead of the petitioner having only two days, he had six, exclusive of Sunday, to prepare his defence. He had two counsel present before the jury, and all the time they asked for was granted them. The objection, under the circumstances, is not well taken.
Another objection is made as to the manner in which the commission was executed, that the commissioners, against the objection of counsel, allowed as evidence the opinions of witnesses, who were not medical men or experts, as to the lunacy of the petitioner, and as to his competency to transact business.
The general rule is, that the opinion of a witness is not evidence to go to a jury. There are exceptions to the rule. In matters of science and trade, a person skilled in the particular science or trade may not only speak as to facts, hut may give his opinion in evidence; and even further than this. A medical man is not only permitted to give his opinion as to the state of a patient whom he has seen, hut he will he permitted, after hearing a detail from other witnesses of the symptoms, to give his opinion of the nature and character of such symptoms. To these may, I think with propriety, he added a further exception, *192 that the opinion of a witness is admissible where its propriety is apparent from the nature of the case. As in the case of insanity, a witness may state facts, may give the look of the eye, and the actions of a man, but unless he is permitted to tell what they indicate, or, in other words, be permitted to express an opinion, he cannot convey to the mind distinctly the condition of the man that such acts and looks portray. As rebutting testimony, it is certainly competent to ask a witness whether, in his opinion, the subject is not of sound mind? The weight or value of an opinion is a very different thing from its admissibility as evidence. Unless the witness gives facts upon which his opinion is founded, then such opinion ought not to be admitted as any evidence. I believe such has been the rule adopted by the courts in New Jersey. In the case of Whitenack v. Stryker and Voorhees, 1 G. C. R. 8, where a will was contested on account of the incapacity of the testator, the opinions of witnesses were admitted as evidence. The Chancellor, in laying down the principles of law to govern that case, remarks: “ that the opinions of witnesses, other than the testamentary witnesses, as to the capacity of the testator, are to be received as the slightest kind of evidence, except so far as these opinions are based on facts and occurrences which are detailed before the court.” In the case of Sloan v. Maxwell and others, 2 G. C. B. 563, Chief Justice Ewing, who, as master, sitting with Justice Drake,, gave an advisory opinion to the Chancellor, says: “ The mere opinions of witnesses are entitled to little or no regard, unless they are supported by good reasons, founded on facts which warrant them, in the opinion of the jury. If the reasons are frivolous or inconclusive, the opinions of the witnesses are worth nothing.”
In this case the commissioners permitted witnesses who had been long acquainted with the petitioner to give their opinions as to the soundness of his mind, and to detail the facts and circumstances within their own knowledge *193 upon, which such opinions were based. I do not think they erred in admitting such evidence.
A further exception stated in the petition is, because ..the commissioners charged the jury, that enfeeblement of the memory was included in the term lunacy, and if made out was sufficient to support a finding of lunacy; and because they also charged the jury, that the term lunacy included dementia, and that if the first degree of dementia, to wit, that arising from loss of memory, was made out, it was sufficient to make out the case, without evidence of a want of proper management of person and property.
The exception would be a good one, if it were true in point of fact. The affidavit of Mr. Thompson, one of the commissioners, is before me. He states that the charge was reduced to writing by himself] and that, with the approbation of the other two commissioners, he delivered the same to the jury. He says, “the jury were referred to the account given in Dean’s Medical Jurisprudence of the symptoms existing in the different degrees of senile dementia, as there arranged, and which had been referred to by the counsel of Daniel Vanauken, and were told that it was not necessary that all the characteristics of dementia, mentioned by the author arising in the four different degrees of dxmentia, should concur at the same time in one individual, in order to constitute dementia. The jury were further charged, that the term lunacy included both classes of mental alienation, mania and dementia, and that if the jury believed, from the evidence, that such unsoundness of mind existed in the case of Daniel Vanauken as rendered him incapable of managing his affairs, and that this unsoundness was caused by dementia, or other mental alienation, they might find him a lunatic and of unsound mind.” This charge violates no principle of law, and the exception, therefore, is not well taken. I can see no just cause for setting aside the inquisition on account of anything that occurred in the execution of the commission.
*194 The petitioner further asks, that he may "be permitted to traverse the inquisition, and this is the only question remaining to he disposed of. It is addressed to the sound discretion of the court; and, if, upon reviewing the case as it is before me, a reasonable doubt is raised as to the petitioner being a lunatic, the traverse should be allowed.
The evidence that was taken before the jury was not reduced to writing; but the affidavits of the witnesses who were examined have been since taken, and I presume the case, as it appeared before the jury, is fairly presented.
The petitioner is an old man, nearly eighty years of age. He is the owner of a large farm in the county of Sussex, which he has occupied and carried on for many years. This appears to have been his only occupation and business. If he is of unsound mind, it is the effect of old age. His mind has not been shattered by any disease which has affected his body, or by any shock proceeding from accident or misfortune of any kind. The witnesses all speak of his failure of memory, and deduce their opinions simply from this criterion. He seems to have been actively engaged upon the business of his farm up to the time of taking the inquisition. There is evidence of his transacting business with his neighbors, in which he exhibited ordinary prudence and judgment. He has had the control of his property, and been associating with his relatives and neighbors, and yet there is no evidence of his disposing of any of his property indiscreetly, or of entering into any engagements showing a want of judgment. Although a number of witnesses express the opinion that he is incapable of managing his affairs, yet no one instance is given by any of them showing such incapacity. The reasons they give for their opinions are founded upon the mere fact of a partial failure of memory. This defect the old man seems to be aware of "himself. He has mind enough to be sensible of this defect, and to acknowledge it. A mere failure of memory and *195 decay and feebleness of the intellectual faculties are tlie natural concomitants of old age. They are not the evidences of that unsoundness of mind, which will justify a jury in finding a man a lunatic. To warrant this, they must be such as to import a total deprivation or suspension of the ordinary powers of the mind. “ Being non compos, of unsound mind, are certain terms in law, and import a total deprivation of sense : now weakness does not carry this idea along with it; but courts of law understand what is meant by non compos or insane, as they are words of a determinate signification.” Ex parte Burnstey, 3 Atk. 168. Old age has evils enough, without adding to the misfortunes which usually accompany it. To deprive an old man of the control of Ms property, is to strip Mm of the only means he has left of commanding that respect and attention which is all that renders his life endurable. A court should exercise great care to see that mere old age and its attendant infirmities are not made the pretexts for establishing that unsoundness of mind which will deprive a man of his liberty and his property. In England, the jmisdiction of the court is more extensive. The statute 11 Geo. 4, and 1 William, 4, c. 60, gives a power to issue a commission of lunacy in all cases where an individual is incapable of managing his affairs, although he be neither an idiot, nor a lunatic, nor of unsound mind, in the strict sense of these terms.
I am willing, under all the circumstances of this case, to afford a further opportunity for investigation, if the petitioner is really desirous of a traverse, and has mind enough understandingly to make such a request of the court. This petition is signed by Daniel Vanauken, but it is not sworn to by him. I think it is proper that such a petition should not be under oath. But the court should be satisfied that it is, in truth, the petition of the alleged lunatic. He should be capable of understanding the nature and object of the petition. Christie’s case, 5 Paige 242; Shel. on Lun. 118; 1 Collins on Lun. 172. I shall *196 direct the petitioner to be brought before the court, in order that a private examination may be had for the purpose of ascertaining whether he understands the object of the petition, and desires a traverse. If the distance of the petitioner’s residence from the court makes this inconvenient, I shall direct the examination to be made by some discreet master of the court.