In re Devausney.

---

In re SARAH M. DEVAUSNEY, alleged to be a lunatic.

1. The court of chancery has jurisdiction to issue a commission *de lunatico inquirendo* if the alleged lunatic, though non-resident, has real estate in this state, and if necessary appoint a receiver.

2. The provisions of the statutes (*Rev. p. 602 ? 2; P. L. of 1890 p. 507*) are, however, so ample and the procedure so simple that recourse should be had to the remedy thereby provided, unless there are insurmountable reasons for not doing so.

---

An inquisition has been returned into this court finding that Sarah H. Devausney was, at the time of taking the inquisition, a lunatic and of unsound mind, so that she is incapable of the government of herself, her lands, tenements, goods and chattels, and that she has been in the same state of lunacy for the space of twenty-five years last past, and that, at the time of the said inquisition, she was entitled to a one equal seventh part of the

personal estate of her father, Jacob S. Vanness, deceased, and also seized of and entitled to a one equal seventh part of two tracts of land in Hudson county, in this state.

The petition on which the inquisition was issued was filed by Andrew Devausney, of the city of New York, State of New York, husband of the alleged lunatic. It states that, by the will of Mrs. Devausney's father, she is entitled to an equal seventh part of real and personal estate in New Jersey, and that she was, at the time of filing the petition, an inmate of the Bloomingdale asylum for the insane, in the State of New York.

The jurisdiction of the court is brought in question.

*Mr. Thomas S. Henry*, for the petition.

GREEN, V. C.

The jurisdiction of the court to institute the proceedings *de lunatico inquirendo* is challenged on the ground that, although the alleged lunatic is seized of and entitled to real and personal estate in New Jersey, she is not a citizen of or resident in this state, but is a citizen of and resident in New York.

In *Matter of Perkins, 2 Johns. Ch. 124*, Chancellor Kent directed a commission to issue to inquire into the alleged lunacy of Daniel Perkins, of Bridgewater, in the State of Massachusetts, who was stated in the petition to be the owner of lands in New York, the chancellor saying: "There is no doubt, from the case *Ex parte Southcote, Amb. 109*, that a commission of lunacy may issue against a person resident abroad."

In *Matter of Petit, 2 Paige 174*, Chancellor Walworth directed a commission to issue in the case of an alleged lunatic, who was a resident of Wilton, in the State of Connecticut, and who was stated in the petition to be entitled to real and personal property in New York.

In *Matter of Ganse, 9 Paige 416*, the alleged lunatic had resided in Fishkill, New York state, whence, in a state of mental aberration, he had gone to some place unknown, leaving *personal* property in care of his brothers, in Dutchess county. Chancellor Walworth said that, "since the decision of Lord Hard-

wicke, in *Southcote's Case*, there can be no doubt of the right of the chancellor to issue a commission where the lunatic has lands within his jurisdiction, although the lunatic is himself domiciled abroad." It did not appear that Ganse had real estate in New York, but it did appear he had personal property therein ; that, as he had left his residence in Fishkill, in a state of mental aberration, it was wholly improbable he could have established any legal residence out of the state since that time, and he must, therefore, be considered still a citizen of the State of New York and a resident of Fishkill, and the chancellor directed a commission to issue to be executed in that town.

In *Matter of Fowler, 2 Barb. Ch. 305*, the alleged lunatic resided in Ohio. Chancellor Walworth held that it must appear by the petition, in case the alleged lunatic was non-resident, that he owned property in the state, saying " the court had no jurisdiction to issue a commission unless the alleged lunatic resided here or was the owner of property in this state."

In *In re Child, 1 C. E. Gr. 498*, Chancellor Green (at *p. 499*) says : "A commission may issue when the alleged lunatic is a non-resident or temporarily absent from the state, and when it is impossible for the jury to see him," referring to the cases before mentioned. It is true that the question before the chancellor was only in what place the commission should be executed, the alleged lunatic being actually in the state lunatic asylum in Trenton, and his former domicil being in Morris county, but his statement shows what he considered decided by *Ex parte Southcote* and the other cases.

The jurisdiction is recognized in *Shelf. Lun. 86 ; 2 Barb. Ch. Pr. 230 ; 2 Hoffm. Ch. Pr. 251 ; Blake Ch. Pr. 444; Dick. Ch. Pr. 610, note.*

It is urged that all the American authorities cited rest on the case of *Ex parte Southcote, Amb. 109 ; S. C., 2 Ves. Sr. 401*, and that the lord-chancellor granted the commission in that case because the alleged lunatic was a subject of Great Britain, resident abroad, but having an estate in England. I do not think an examination of the case shows that this was the *ratio decidendi*. It is presumptively true that Southcote was a British

·subject, and Lord Hardwicke did say "there can be no good reason why, if any subject having an estate in England happens to be an idiot or lunatic, but is out of the kingdom, there can be no inquiry here," but I do not understand that the fact that the alleged lunatic was a subject was the *sine qua non* for instituting the inquiry. The jurisdiction, in granting the inquiry in cases of lunacy, was not at that time in the court of chancery or the lord-chancellor as chancellor, but in him as the person having, under the special warrant of the crown, the right to ·exercise the duty of the crown in the care of the persons and estates of idiots and lunatics. *Sherwood* v. *Sanderson, 19 Ves. 280.* This care the crown had by virtue of its prerogative, but it was a right which was never exercised except upon a previous office (or inquisition) found, and for the purpose of its exercise, the crown, by sign manual, delegated its authority to its own great ·officer, not necessarily, but usually, the lord-chancellor. *Elm. Pr. Lun. 1.* The duty was not only as to the person, but also as to the estate of the idiot or lunatic. As to the person, it was the same as to each class, viz., to care and provide for safety and maintenance out of the estate of the idiot or lunatic; as to the ·estate, it was different in this respect: in the case of a lunatic, the crown, as a trustee, had the duty only of taking charge of the person and property for the exclusive benefit of the lunatic and his estate, while in cases of idiocy it had both a trust and an interest, having the right to take, if it pleased, the profits of the estate after making adequate provision for the necessary comforts of the idiot and his family. *Elm. Pr. Lun. 3; Re Fitzgerald, 2 Sch. & L. 432, 435; Shelf. Lun. 10, 11.* An alien ·could take a fee by purchase, but he could not hold it against the king (*Co. Litt. 2 a, 2 b*), but the estate purchased by an alien ·did not vest in the king until office found, until which the alien was seized, and could sustain actions for injuries to his property. *Page's Case, 5 Coke 52 b; 2 Bl. Com. 293, ch. 19 § 5 p. 14.* If ·an estate in England belonged to a lunatic who was a non-resident subject or alien, the care of it for the lunatic and its preservation was still the duty, so to speak, of the crown, which, however, was not to be exercised until such lunacy was ascertained by the

finding of a jury under a commission *de lunatico*. The finding of a commission in another jurisdiction could not be made effective as to property not in that jurisdiction without statutory authority. *In re Duchess of Chandios, 1 Sch. & L. 301; Re Houstoun, 1 Russ. 312; Re Perkins, 2 Johns. Ch. 124.* So that, if no commission could issue in the jurisdiction of the estate, the owner being non-resident, no lawfully-appointed care-taker of the property could be secured. The doubts as to the case which Lord Hardwicke expressed in *In re Southcote*, as stated in the report in *Ambler*, arose from matters of practice, and were whether he should issue the commission, first, because the comsioners and jury were entitled to inspect the alleged lunatic and examine him either before them or by a committee, which was impossible, as Southcote was in a foreign country; and next, because the general rule was that the commission should be executed by a jury of the county of the residence of the alleged lunatic, which was impracticable, as he was resident in a foreign country, but he resolved these doubts by directing the commission to be executed at the mansion-house, the former residence, saying, " No mischief can follow from the granting a commission, for if the jury are satisfied without inspection they will find so; if not, they will not make a return, or will return that it does not appear to them that he is an idiot or lunatic."

This examination of the law and case, in my judgment, demonstrates that *In re Southcote* is an authority for issuing a commission when the alleged lunatic is non-resident, if he or she owns an estate within the jurisdiction.

The chancellor, in *In re Farrell, 6 Dick. Ch. Rep. 353,* gives the origin and history of the jurisdiction formerly exercised by the lord-chancellor of England in respect of commissions *de lunatico inquirendo,* and traces the legislation of this state from 1794 to the present time. The result of that legislation is that the jurisdiction formerly exercised by the lord-chancellor under the authority of the sign manual has been vested in the court of chancery.

The duty of the care and safe-keeping of the person and property of idiots and lunatics imposed on the chancellor by the

act of 1794 (*Pat. L. p. 125*), was transferred by the act of 1804 (*Bloomf. L. p. 117*) to a guardian to be appointed by the orphans court of the county in which the lunatic resided. That act, as well as the law as it now stands, required that on the return of the inquisition, if the party was found *non compos mentis*, a copy of all proceedings had thereon was to be transmitted to the orphans court of the county in which the lunatic resided, which court was authorized and directed to appoint such guardian. It is apparent that no orphans court other than that of the domicil has jurisdiction to appoint a guardian for a person so found a lunatic, and that the statute in that regard is inoperative with respect to a non-resident lunatic.

But the inquisition having been returned that the person is *non compos mentis*, this court may still, if necessary, provide for the care and preservation of his or her estate by the appointment of a receiver on a proper application for that purpose.

The court has long exercised the power of appointing a receiver or temporary committee to care for the estate of a lunatic. *In re Dey, 1 Stock. 181.* This has been done, generally, pending judicial proceedings, on the ground that there is no person entitled to the property who is, at the same time, competent to hold and manage the estate. *3 Pom. Eq. Jur.* § *1332. Kerr Rec. 135* says : "The case of lunatics is the only exception to the rule that a receiver will not be appointed unless a suit is pending."

In *Ex parte Whitfield, 2 Atk. 315*, Lord Hardwicke, as to the appointment of a receiver of an infant's estate, no suit being pending, says : "The cases of idiots and lunatics has been insisted on as a similar case, but the jurisdiction which the court exercises with respect to them is a particular one and therefore not like the present." See, also, *Ex parte Warren, 10 Ves. 622 ; Ex parte Radcliffe, 1 Jac. & W. 620; Kerr Rec. 113; Shelf. Lun. 186.*

It is, however, a jurisdiction which the court seldom exercises, and only when it seems necessary for the protection and care of the estate of the lunatic.

The statutes of this state have made ample provision for the care of the estates of non-resident lunatics by the appointment of a guardian by the orphans court of the county in which the property of the lunatic may be, or by the ordinary in certain cases, on presenting and filing an exemplified copy of the proceedings upon an inquest or finding of idiocy or lunacy in the domicil of the lunatic according to the laws of such residence. *Rev. p. 602 § 2; P. L. of 1890 p. 507.* In my judgment, these provisions are so full, and the procedure so simple, that recourse should be had thereto unless there are insurmountable reasons for not doing so. But these provisions of the statute do not oust this court of its jurisdiction to issue the commission, and this return should be filed with the clerk, to be proceeded on as occasion may require.