In the matter of the alleged lunacy of ELIZABETH AGNES COMFORT.

[Filed February 23d, 1904.]

1. When, upon an application for leave to traverse an inquisition of lunacy, an issue is directed to be tried at law, a motion for a new trial of the issue is to be made before the chancellor, and not in the supreme court.

2. Upon the trial of an issue directed to try whether E. A. C. was and is of unsound mind, so that she is not capable of the government of herself, her lands, &c., the evidence was restricted by a stipulation of counsel to the period covered by the inquisition.—*Held*, that there should be a retrial.

---

*Mr. James Parker*, for the alleged lunatic.

*Mr. Eusebius W. Arrowsmith*, for the petitioner.

MAGIE, CHANCELLOR.

By an inquisition under a commission from this court Elizabeth Agnes Comfort was found to be of unsound mind. She applied and was permitted to traverse the inquisition. The issue made up thereon was sent from the supreme court to the circuit court of Middlesex county, and the *postea* returned

therefrom and certified to this court discloses that the jury found her to be of unsound mind.

A motion is now made for a decree confirming the proceedings and directing the clerk to transmit to the orphans court of the county in which Mrs. Comfort resides a certified copy of all the proceedings, pursuant to the statute.

The counsel for Mrs. Comfort resists this motion, and moves this court for a new trial, on the ground of alleged errors of law committed by the trial judge, and on the ground that the verdict was contrary to the weight of evidence.

Counsel for the person prosecuting this inquiry first objects to the consideration of the motion for a new trial, contending that such a motion is to be made, not to this court, but to the supreme court, in which the issue was tried.

The proceedings of this court in cases of idiocy and lunacy, and upon a commission returned in such cases, are required to be "as heretofore practiced." Such was the language of the act of February 28th, 1820 (*Rev. p. 696*); the act of April 16th, 1846 (*Rev. Stat. p. 552*), and the act of March 27th, 1874. *Gen. Stat. p. 1696.*

The practice referred to is doubtless that which existed in the court of chancery of England, as adopted by the chancellors of New Jersey.

Before the act of *2 & 3 Edw. VI. c. 8,* the English chancellors held that an application for a traverse upon an inquisition of lunacy was addressed to their discretion. After the passage of that act they held, after some contrary views had been expressed, that the traverse of such an inquisition was a matter of right and must be granted to the alleged lunatic if his application therefor was shown to be the act of the free will of a person capable of forming and expressing such volition. *Shelf. Lun. \*118; Lindsley's Case, 1 Dick. Ch. Rep. 364.*

It is not open to doubt that where an inquisition of lunacy was traversed in England a motion for a new trial of the issue was made, not in the court of chancery, but in the court of king's bench. In this respect it was analogous to those proceedings within the ordinary jurisdiction of the court of chan-

cery, administered in what was called the Petty-bag office, and in which the chancellor was bound to observe the order and method of the common law (*Toml. L. Dict., tit. "Chancery;" Toml. L. Dict., tit. "Petty-bag;" Ex parte Barker, 1 Cox C. C. 418; Shelf. Lun. \*123*), and the distinction was made between applications for a new trial of a traverse and applications for a new trial of an issue directed out of the court of chancery. In the former it was held that the application should be made in the king's bench, and in the latter that application should be made in the court of chancery. *Ex parte Kensington, Coop. C. C. 96; Bowker v. Nixon, 6 Taunt. 444; Carstairs v. Stein, 4 Mau. & Sel. 192; 1 Coll. Lun. 163.*

This practice, so far as it relates to application for a new trial upon a traverse of an inquisition of lunacy, was continued in England until the passage of the act of parliament of *6 Geo. IV. c. 53 § 3*, whereby the power was given to the chancellor, when dissatisfied with any verdict returned upon a traverse, to direct one or more new trial or trials, as usual in cases of issues directed by the court of chancery.

Where issues are directed by this court to be tried at law, it is well settled that the *postea* must be returned to this court, and à motion for a new trial should be made here. *Trenton Banking Company v. Rossell, 1 Gr. Ch. 492.* And this practice was deemed to be applicable to issues at law directed by the court under the provisions of the act to quiet title. *Powell v. Mayo, 11 C. E. Gr. 120.* Issues thus directed in equity cases are said to be resorted to for the purpose of informing the conscience of the court, but it is well settled that the chancellor is not bound by the results, but must decide each case according to the dictates of his own judgment. *Black v. Lamb, 1 Beas. 108; Black v. Shreve, 2 Beas. 455; Newark v. New York Railroad Co., 8 C. E. Gr. 515.*

If our proceeding by way of traverse is necessarily or in fact a traverse of the nature which, by the act of *Edw. VI.*, was given as a right, it would seem that under the practice of the English chancellors, before the act of *Geo. IV.* (both above cited), the application for a new trial of the issue joined

thereon should have been made in the supreme court. Such was my impression upon the first argument of this matter. But I have been led to a different conclusion upon a subsequent examination, and for the following reasons:

It has been held in this court, and in the court of errors and appeals, that the act of *Edw. VI.* has not been adopted in the practice of this court, and that an application to traverse an inquisition of lunacy is addressed to the discretion of the chancellor, and not to be granted as a matter of right. *Covenhoven's Case, Sax. 19; Van Auken's Case, 2 Stock. 186; James' Case, 9 Stew. Eq. 547; Lindsley's Case, 1 Dick. Ch. Rep. 358; De Hart v. Condit, 6 Dick. Ch. Rep. 611; Davenport's Case, 18 Dick. Ch. Rep. 343.*

In *James' Case, ubi supra,* Chief-Justice Beasley, speaking for the court of errors and appeals, in reversing an order of the chancellor denying a motion to set aside an inquisition, declared that the cause should be remitted to chancery with instructions to allow the alleged lunatic to traverse the inquisition, or that an issue should be directed. This recognized the right of the chancellor to direct an issue at law in such cases, and if such an issue is directed a new trial thereof should be applied for in this court.

An examination of the order made in this case clearly indicates that an issue was directed to determine "whether the said Elizabeth Agnes Comfort was and is of unsound mind so that she is not capable of the government of herself, her lands," &c., and such an issue was made up in the pleadings in the supreme court. A traverse in England was a summary proceeding, setting out the inquisition and traversing or denying the facts thereby found, and the issue joined thereon was by the attorney-general for the crown. *Shelf. Lun. *115.*

The result is that, contrary to my first view, I conclude that the issue tried in this cause was an issue at law directed by this court, and that the application for a new trial is properly made here.

The conclusion thus reached has compelled the examination

of the whole course of the trial of the issue in the supreme court and the grounds presented for a new trial.

My examination of the case has not disclosed any errors committed by the learned justice who tried the issue, either in the admission or the rejection of evidence or in his charge to the jury, which contained a succinct, but lucid and correct, exposition of the law bearing thereon.

It was strongly contended by counsel for Mrs. Comfort that the verdict was against the weight of the evidence. I do not deem it necessary to analyze the evidence which, in respect to unsoundness of mind, is open to question, for I feel compelled to direct a retrial of the issue upon a ground not adverted to by counsel, but which appears in the case and cannot be passed over. The issue directed to be tried was "whether the said Elizabeth Agnes Comfort was and is of unsound mind so that she is not capable of the government of herself, her lands," &c. Shortly after the evidence was opened the counsel of the petitioner and of the alleged lunatic entered into a stipulation, in open court, which was taken upon the stenographer's notes, to the effect that the evidence should be confined to the period covered by the finding of the inquisition, and the *status* of Mrs Comfort during that period.

The learned justice called the attention of counsel to the fact that such a course would not dispose of the issue directed to be tried. Counsel, however, seemed to consider that what was presented was a mere traverse of the inquisition, and not an issue specially directed. The court accordingly felt compelled to hold counsel to their stipulation, and the result was that the case was tried upon a wrong theory.

Ordinarily such a course of conduct by counsel might be held to bind those they represent. But this is not an ordinary case. My decree on this verdict must necessarily result in the appointment of a guardian of the person and property of Mrs. Comfort. I am unwilling to make a decree on a verdict thus reached, although the course pursued was with the assent of her counsel. Nor do I think I should be deterred from directing a new trial by the fact that the evidence furnishes some indication that

the condition of Mrs. Comfort at the time of the trial remained as it was during the period to which the evidence was confined, for it is clear that such indications arise alone from inferences drawn from the circumscribed evidence. I add, further, that I am unwilling to sanction a practice which might, in some cases, result in the injustice of a decree after the subject had recovered and become of sound mind.