In the matter of PERCIVAL A. HANNAH, found to be a lunatic.

[Decided June 23d, 1909.]

1. Since the statute of Edward III., conferring a right to traverse a lunacy inquisition, has never become a part of the law of New Jersey, such traverse will only be allowed in the exercise of judicial discretion.

2. The son of the subject of a lunacy inquisition has an actual *bona fide* interest therein entitling him to intervene to protect the parent.

3. A traverse of a lunacy inquisition is only available on an allegation that lunacy has been untruly found and cannot be availed of so as to obtain the release of a lunatic on the ground that he has recovered sanity.

4. Under act of April 2d, 1898 (*P. L. 1898 pp. 220, 221*), as amended by act of June 12th, 1906 (*P. L. 1906 pp. 679, 681*), providing that insane persons shall be confined until restored to reason or removed or discharged according to law, the authorities in charge of an insane asylum should release a person committed from confinement on his restoration to reason.

5. Where a person committed to an insane asylum is restored to reason, and the authorities refuse to discharge him, he may be enlarged on *habeas corpus* sued out of the chancery or common-law court under act of April 2d, 1898. *P. L. 1898 p. 231.*

---

On application for leave to traverse inquisition.

*Mr. John W. Wescott,* for the motion.

WALKER, V. C.

On October 17th, 1908, a commission in the nature of a writ *de lunatic inquirendo* was issued out of this court to inquire into the lunacy of Percival A. Hannah, of the county of Salem. The inquisition was taken on November 2d and returned on November 7th, 1908, the subject, Percival A. Hannah, being found to be a lunatic and of unsound mind and that he did not enjoy lucid intervals, so that he was not capable of the government of himself, his lands, tenements, goods and chattels, and that he had been in the same state of lunacy for the space of one month then last past and upwards.

On December 15th, 1908, a decree was made confirming the proceedings and ordering the transmission of the record to the orphans court of the county of Salem.

And now, June, 1909, Norman H. Hannah, of Philadelphia, in the State of Pennsylvania, a son of Percival A. Hannah, the lunatic, petitions and shows that his father has since been and still is confined in the Cumberland County Insane Asylum, and avers that his lunacy was acute and that he has now so far recovered that his mental faculties are in healthy and normal condition, and his physical state such as to enable him to attend to his affairs, and he prays that his father may have leave to traverse the inquisition or that an issue may be awarded to try the fact of his lunacy.

By the common law no traverse of the inquisition was allowed, but right to traverse was first granted by statute in the time of Edward III. *Shelf. Lun. 113.* The statute of Edward never has become a part of the law of this state. *Lindsley's Case, 46 N. J. Eq. (1 Dick.) 358, 364.* With us a traverse will be allowed only upon the exercise of sound judicial discretion. *Ibid.*

By the English practice a lunatic might traverse the inquisition either in person or with the chancellor's permission by attorney. *Shelf. Lun. 118.* And where the lunatic was confined in prison for debt, and a petition to traverse had been presented, the lord chancellor ordered a *habeas corpus* to bring the lunatic before the chancellor at the sitting of the court two days afterwards. *Ibid.* And the party may apply either in person to the chancellor to be inspected or his friends may sue out a writ returnable in chancery for that purpose. *Ibid. 119.*

*In the matter of Heli, a lunatic, 3 Atk. 635,* Lord Chancellor Hardwicke had before him the question whether a person could traverse an inquisition of lunacy without bringing the lunatic in *propria persona* before the court, and he observed that as to an inquisition *de idiota,* the subject may in person or by his friends come into chancery and show the matter and pray that he may be examined before the chancellor, and if, upon examination, he be found no idiot, then the inquisition shall be taken as void. He held that the same practice obtained with reference to lunacy.

In *Covenhowen's Case, 1 N. J. Eq. (Saxt.) 19,* Chancellor Vroom said (at *p. 21*) : "It is clear that a stranger has no right to interfere in a proceeding of this nature. He can neither sue out a commission, nor can he make himself a party to it by any application he may make to this court. I take it to be equally clear, that when a person has actual interests, either equitable or legal, which are affected by the inquisition, he may apply to this court for relief." The chancellor was dealing with the case of one who had acted as attorney in fact for the lunatic, and who alleged that by reason of the finding of the jury he was greatly endangered in the matters transacted by him as attorney. The chancellor considered that the attorney's petition should be dismissed, but remarked (at *p. 23*) : "Taking all cases together, it is fairly to be inferred, as I think that applications on the part of third persons, in matters of this nature, are not to be encouraged, yet that they will be listened to and granted when actual *bona fide* interests and rights are endangered." The petitioner for this traverse is certainly a stranger to the proceedings, but, as the son of the subject of the inquisition, he has an actual *bona fide* interest, filial and sentimental rather than substantial,

though it may be, to have the question of his father's lunacy tried out.

It would be an anomaly, indeed, if children could not intervene to protect parents declared to be lunatics in these proceedings on inquisition.

But, assuming the verity of the allegations in the petition under consideration, still, the subject of the inquest is not entitled to traverse the inquisition. That remedy is available only on an allegation that lunacy has been untruly found. *Shelf. Lun. 113, 114.* Where a party is aggrieved by the finding of an inquisition of lunacy, the proper procedure is by a direct appeal to the court by means of a traverse. *10 Encycl. Pl. & Pr. 1202.* As the petition does not deny that lunacy was properly found, but, on the contrary, admits the insanity of the subject at the time of office found by the assertion that the lunacy was acute and that the subject has now recovered, no case for a traverse is presented.

On this application it is not shown whether a guardian was appointed for the lunatic by the orphans court to which the proceedings were transmitted according to the statute, and the application is not one in form to supersede the inquisition under our practice, in which cases it is the usual course to refer the matter to a master to take proofs as to the state of mind of the petitioner, and to report the proofs with his opinion thereon. *In re Rogers, 5 N. J. Eq.* (1 *Hal. Ch.*) 46; *In re Price, 8 N. J. Eq.* (4 *Hal. Ch.*) 533; *In re Weis, 16 N. J. Eq.* (1 *C. E. Gr.*) 318; *In re Ellis, 62 Atl. Rep.* 702.

If, as alleged in the petition, the subject has now recovered from his lunacy, he is entitled to be liberated under the statute. Our act concerning the commitment of insane persons to hospitals provides that such persons shall be confined therein until restored to reason or removed or discharged according to law. *P. L. 1898 p. 220* (bottom of *p. 221*) ; amended, *P. L. 1906 pp. 679, 681.*

If Mr. Hannah has been restored to reason and the authorities of the institution in which he is confined refuse to discharge him, he may be enlarged on *habeas corpus,* and the proceedings may

be had before the judge of a common law court, or this court. *P. L. 1898 p. 231; In re Lee, 55 Atl. Rep. 107.*

Unless the petitioner chooses to pursue the remedy by *habeas corpus,* an application to supersede the inquisition upon the ground of the restoration to sanity of the subject of the inquest will be entertained. The application for a traverse must be denied.