In the matter of HANNAH FRANKISH, found to be a lunatic.

[Decided July 19th, 1916.]

1. Formerly counsel fees were not allowed by the court of chancery in lunacy proceedings, except the nominal statutory retaining fee which was taxed in the bill of costs; but now, by virtue of *P. L. 1910 p. 427*, counsel fees may be allowed by the chancellor to counsel for the petitioner and also counsel for the alleged lunatic, if he makes defence by counsel, as he may lawfully do, as a decree of lunacy is made for the benefit of the lunatic, and he, therefore, as well as the petitioner, is a party obtaining the decree.

2. Under the act of March 23d, 1887 (*Comp. Stat. p. 2784 § 3d*), it is proper to allow commissioners in lunacy a reasonable *per diem* for their services; and under this statute it is lawful to allow the jurors who may be summoned the same compensation as was allowed jurors in the circuit courts at the time of the approval of that act, which was $2.00 *per diem*, and as *P. L. 1915 p. 154*, raising the pay of jurors in certain courts to $2.50 per day, does not relate to jurors summoned in lunacy inquisitions, their compensation is restricted to that allowed by the act of 1887.

3. There being no authority for taxing fees for constables attending on a jury in lunacy proceedings, nor for fees for stenographers attending and taking the testimony, such charges are not lawful and cannot be included in the taxed bill of costs.

On application for counsel fees, costs and expenses.

*Mr. Wilbert V. Pike,* for the petitioner.

*Mr. Ernest L. Bartlett,* for the lunatic.

WALKER, CHANCELLOR.

Hannah Frankish, of the borough of Collingswood, Camden county, was, upon inquisition, found to be a lunatic, and a decree of lunacy, confirming the proceedings, was duly made, in which it was ordered that the clerk of this court transmit to the orphans court of the county of Camden a certified copy of all the proceedings agreeably to the statute.

Application is now made for the allowance of counsel fees to the solicitor of the petitioner, and to counsel who appeared for

the lunatic, and commissioners', jurors', stenographer's and constable's fees to be included in the taxed bill of costs. The jurors found that the subject of the inquisition was seized of certain lands in this state, the issues and profits of which were of the yearly value of $168, and that she was also possessed of personal estate amounting to $981.51, cash on hand and in bank.

Where the estate of a lunatic is small, the court will do what it can to avoid expense. See *Matter of Child, 16 N. J. Eq. 498.*

*In re Farrell, 51 N. J. Eq. 353*, Chancellor McGill observed (at *p. 360*) that the end of lunacy proceedings is reached when lunacy is found, and the mere fact that such proceedings were had under the court's control cannot give it jurisdiction over either the guardian or the lunatic's estate. He held further (at *p. 361*) that the legislative purpose found in the *act of March 23d, 1887*, was to provide more liberal payment to commissioners and jurors than the then existing law permitted, but that it was by no means clear that its purpose was also to confer upon the court a right to reach out and seize the estate of a person who is adjudged to be of unsound mind.

Formerly, counsel fees were not allowed by this court in these proceedings, except the nominal retaining fee which was taxed in the bill of costs. I do not say that counsel fees were not formerly allowable in this class of cases. Guardians of lunatics may have paid them and received allowance therefor upon accounting.

In *Conover v. Conover, 15 N. J. Law 420,* the supreme court on *certiorari,* reviewing the action of the Middlesex orphans court on the question of the allowance of an account of guardians of a lunatic, observed (at *p. 421*) :

"The fees for drawing writs, and all other proceedings in the court of chancery, are fixed by the fee bill. These services were included and charged for in the bill of costs. If they were not, the orphans court should not have allowed for them. So, the various separate charges and allowances for solicitors' and commissioners' fees, and for the sheriff's, jurors' and witnesses' fees on the inquest, are, in my opinion, all improper. The orphans court could not tax and settle the bill of costs on the commission of lunacy. The accounting party ought to have pro-

duced and shown to the court a regular bill of costs on the commission, settled and taxed by the proper officer of the court of chancery, embracing these various items; otherwise, they should not have been allowed."

That case dealt exclusively with the taxed bill of costs.

Formerly, twenty-four jurors were summoned in lunacy proceedings, and they were allowed twenty-five cents each. The authority for this may be found in the fee bill (*Comp. Stat. p. 2288*), where provision is made for such a sum to be paid to every juror in each action on which he is sworn, including a writ of inquiry and coroner's inquest, but is it provided that fees paid by virtue of that section shall not be taxed in the bill of costs? However, I apprehend that that was the authority for the twenty-five cents dole to each juror in an inquiry under a commission in the nature of a writ *de lunatico inquirendo.* Whether the twenty-five cents was a *per diem,* or to be in full for services in the given matter, even if more than one day was occupied, may be a question, for the very same section provides that in certain cases, other than those I have mentioned, the jurors shall be paid a certain sum for *each* day, but does not make similar provision with reference to the twenty-five-cent allowance. However, fees of jurors in lunacy inquisitions are now provided for in the act of March 23d, 1887 (*P. L. 1887 p. 48*), and which is section *3d, Comp. Stat. p. 2784.* That section provides that it may be lawful for the sheriff in all cases of lunacy to summon twelve, instead of twenty-four, jurors, whose verdict, when found, shall be as legal and binding as if found by twenty-four jurors, and that it shall be lawful for the chancellor to allow to the master and to the other commissioners such compensation as may be reasonable and proper, and to the jurors who may be summoned the same compensation as *then* allowed by law to jurors in the circuit courts; the sum to be paid out of the estate of the person who is the subject of the inquisition.

The provision that the verdict of a twelve-men jury shall be as legal and binding as if found by twenty-four, does not mean that the twenty-four jurors had to concur in the finding. As a matter of fact, the commissioners issuing the precept to the

sheriff, in the case before me, required the sheriff to cause eighteen good and lawful men to appear before them.

In *Lindsley's Case, 46 N. J. Eq. 358,* Chancellor McGill held (at *p. 361*) that at the adoption of the constitution, it was the practice to summon at least twelve, and not more than twenty-four, jurors to serve at lunacy inquisitions, and that no inquisition could be taken upon the oaths of less than twelve, and that a verdict concurred in by twelve out of an uncertain number was good, although the remainder refused to assent. And, Mr. Justice Dixon, speaking for the court of errors and appeals, in *De Hart* v. *Condit, 51 N. J. Eq. 611,* observed (at *p. 613*) that in practice any number not less than twelve nor over twenty-three has been considered adequate; that in *Ferne's Case, 5 Ves. 450,* there were seventeen; in *Dey's Case, 9 N. J. Eq. 181,* twenty-three, and in *Vanauken's Case, 10 N. J. Eq. 186,* twenty-one jurors sworn. Therefore, as I have said, it was lawful to summon eighteen jurors, as was done in this case. But the practice is not to be commended; especially so in a case where the property of the subject of the inquisition is of no greater value than in this case. Counsel who advised the commissioners to issue the precept for eighteen jurors must have known of the meagreness of the lunatic's estate, and he should have advised the issuing of a precept for twelve.

Although Chancellor Magie (*In re Comfort, 63 N. J. Eq. 377*) remarked (at *p. 378*) that in his judgment the act of March 23d, 1887, did not require the commissioners to issue their precept for twelve instead of twenty-four jurors, nor require the sheriff to summon the smaller number, I take it that he did not mean to intimate that the sheriff could override the commissioners and return a greater or less number than they required of him; nor do I believe that the commissioners could act independently of an order of the court in respect to the matter. The commissioners and the sheriff are officers of the court, and I think the court has the power to control what would otherwise be their discretion, at least, discretion in the commissioners, with reference to the number of jurors to be summoned.

In the case under consideration, two days' time was consumed in taking the inquisition, and the sheriff has made a charge for

two days' service for each of the eighteen jurors, at $2.50 per day, making $90. Under the old practice, this charge would have been $6 for twenty-four jurors, or $12 for two days' service, if, in fact, the fee was twenty-five cents per day and not for the entire service.

Now, it is to be observed that the act of March 23d, 1887, does not restrict the allowance of the same compensation as then given by law in the circuit courts, to panels of twelve *only* in lunacy proceedings, but, after providing that the jury may consist of twelve or twenty-four, goes on to provide that the chancellor may allow to the *jurors who may be summoned* the same compensation as then allowed to jurors in the circuit courts. The sum then allowed in the circuit courts was $2, and not $2.50, per day. *Comp. Stat. p. 2964 § 3.* It was not until 1915 that the pay of petit jurors was raised to $2.50 for each day's attendance at court. *P. L. 1915 p. 154.* There is nothing in this act which relates to the pay of jurors summoned on lunacy inquisitions, and as the act of March 23d, 1887, expressly restricts their compensation to the *per diem then received* in the circuit courts, that sum, namely, $2 per day, is still the maximum of their compensation in these proceedings. I say *maximum* because the statute of 1887 provides that the chancellor *may,* not that he shall, allow to the jurors who may be summoned in lunacy proceedings the same compensation as then allowed in the circuit courts. I do not understand that I have any option to make an allowance of any sum between twenty-five cents and $2, but that it must be either the one or the other, and, as the practice has been uniform to tax $2 for each juror, when twelve men were summoned, I would not feel inclined to make an allowance of twenty-five cents only at this late day, and, besides, twenty-five cents is an inadequate fee.

Now, as to counsel fees: As already remarked, formerly nothing more than the nominal statutory retaining fee was allowed by this court and taxed in the bill of costs. The legislature, however, 1910 (*P. L. 1910 p. 427*), enacted that in any cause, matter or proceeding in chancery, the chancellor may make such allowances by way of counsel fee to the party or parties obtaining the order or decree, as shall seem to him rea-

sonable and proper, and shall direct which of the parties shall pay such allowances; or where they are ordered to be paid out of property or funds, shall specify and direct the property or funds liable therefor, and may provide for the inclusion of such allowances in the taxable costs, or may provide for their collection in such other manner as is agreeable to the practice of the court. It is to be observed that there is here no provision for allowance to counsel for parties other than those who obtain an order or decree. This act of 1910 is an amendment to section 91 of the Chancery act, which was construed by Vice-Chancellor Grey and Chancellor Magie in *McMullin* v. *Doughty, 68 N. J. Eq. 776;* affirmed by the court of errors and appeals (at *p. 782*). It was there pointed out that the provision was for the allowance of a counsel fee to the successful complainant, and under the act of 1910, there can be no allowance for counsel participating in the cause who does not take, or who is not at least included in, the order or decree, and whose client does not get a substantially favorable result.

There can be no doubt of the right to make allowance by way of fee to the counsel for the petitioner in this matter, for, on her petition alleging the subject of the commission to be a lunatic, that person has been found and adjudged so to be, in appropriate proceedings and by a decree entered for that purpose.

A decree in lunacy is for the benefit of the alleged lunatic and is for his protection and that of his estate. This is adverted to *In re Farrell, supra* (at *p. 362*). A stranger cannot sue out a commission in the nature of a writ *de lunatico inquirendo. In re Covenhoven, 1 N. J. Eq. 19*. Only relatives who are interested in the welfare of the lunatic may do this.

As the consequences of a finding of lunacy against a man deprive him of the control of his property, and may also deprive him of his personal liberty, no verdict is permitted to pass against him unless he is afforded opportunity for defence, and he has the right to be present at the execution of the commission to make defence and examine witnesses, in person or by counsel. *In re Vanauken, 10 N. J. Eq. 186, 190*.

Now, as stated, the subject of the inquisition may make defence against the charge, and that was done in this case, Mr. Bartelt appearing for the woman found to be a lunatic. The decree, as already intimated, is made for the benefit of the lunatic, being for the protection of herself and her estate. Counsel representing her is, therefore, as much entitled to an allowance as counsel for the petitioner. Each counsel will be allowed $50.

The lunatic's solicitor presents a bill for a stenographer for $20 for services for two days, being, apparently, the usual $10 *per diem* of official court stenographers. In fact, the stenographer is the official stenographer of one of the courts of this state. There is, however, no provision, statutory or otherwise, for the allowance of such a bill. The Chancery act (*Comp. Stat. p. 408*) provides, in section 98, that it shall be lawful for each vice-chancellor to employ a competent stenographic reporter to take down the evidence of witnesses examined before him for the use of the court and the parties, and section 106 makes the same provision with reference to advisory masters. Sections 103 and 108 provide for the compensation of those official stenographers and how they shall be paid. Where they furnish copies to the court the cost is apportioned between the parties and included in the taxable costs. There is, however, no statute, or other authority, for commissioners in lunacy to employ stenographers to take testimony, and if the parties have the evidence so taken, it must be at their own costs and charges. It may be very convenient to have a stenographic report of the testimony in case the inquisition is sought to be set aside as against the weight of the evidence, as may be done. *In re Lawrence, 28 N. J. Eq. 331.* But, as already remarked, there is no method for taxing stenographer's fees in the bill of costs in these proceedings. The same is true as to constable's fees, a charge of $6, for which is included in the sheriff's bill.

In *Smith* v. *Williamson, 11 N. J. Law 313*, it was held that a charge for constable's fees for attending on the jury in an action of forcible entry and detainer was not a legal charge, as there was no such item in the fee bill. The situation is the same

here. In the fee bill (*Comp. Stat. p. 2277*) provision is made, in sections 28, 49 and 50, for the compensation of constables attending certain courts, and performing specified duties, naming them, but no provision is made for the payment of constables attending upon inquisitions of lunacy.

Chancellor McGill—*In re Farrell, supra* (at *p. 358*)—remarked that by the English statute the chancellor 'was authorized to allow costs and expenses out of the estate of the alleged lunatic, and provided as a means of giving effect to the order that it should have the same force and effect as one for the payment of money by the court of chancery. Such a statute has not been passed in this state, save so far as the act of 1910 (*P. L. 1910 p. 427*) enables the chancellor to provide for the collection of counsel fees allowed by him, in such manner, other than in the taxable costs, as may be agreeable to the practice of the court; the alternative being the allowance in the taxed bill of costs. If so allowed, they are to be collected as are the other items in such bill, namely, in lunacy cases they are paid by the guardian when appointed by the orphans court, who will have an allowance therefor on his accounting in that tribunal. *Conover* v. *Conover, supra.* Chancellor McGill—*In re Farrell, supra* (at *p. 360*)—speaking of our law upon the subject, remarked that it has been the practice, when lunacy is found, as part of the proceedings, to have the costs taxed in chancery and certified to the orphans court in anticipation of their being paid out of the lunatic's estate by the guardian when appointed.

The costs had been taxed in this case when the present application was made, which is, in effect, one for re-taxation. The decree of lunacy awarded the master commissioner $10, and the other two, $5 each. This was, doubtless, upon the theory of one day's service. Counsel seemed to think that the commissioners are entitled to a *per diem*, whatever the allowance may be. I am free to say that that would have been an entirely proper method of compensation, but it is not required. The act simply provides that it shall be lawful for the chancellor to allow such compensation as under the circumstances may be reasonable and proper. I think, however, that $10 per day for the master com-

missioner and $5 for each other commissioner is little enough, and that it would be unreasonable to withhold from them two days' compensation at that rate, respectively, when they were that long engaged on the inquiry. Therefore, instead of the $20 taxed, an allowance will be made of $40.

The return was signed by the eighteen jurors summoned. The clerk taxed $24 for jurors' fees, which was $2 per day for twelve men. I have the alternative of allowing $2 per day each, or the inadequate sum of twenty-five cents each, or, perhaps, twenty-five cents per day each. Even though the estate is small, I shall not hesitate to allow the jurors $2 per day each for two days, making $72 in all. The sheriff appears to have actually paid the jurors $2.50 per day, or $90 in all, but the excess over $72 cannot be allowed.

The stenographer's and constable's fees must be disallowed, for reasons given above. Each counsel was engaged two days in the inquiry, and, of course, devoted time to the preparation of the case before the commission was executed. I cannot very well allow less than $50 to each counsel, to be taxed in the bill of costs, and that will be the order. The clerk will re-tax the bill to the extent and in the amounts above indicated.

Hereafter commissioners in lunacy will be directed in the order appointing them to require the sheriff, in their precept, to return twelve jurors only. No embarrassment will arise from this, for, should all twelve not answer, talesmen can be summoned as in other cases.