This is an application by Anne L. Gibb for the issuance of a writ de lunatico inquirendo to inquire into the mental competence of Louise G. Oswald. The petition, duly verified, was also accompanied by affidavits, including one of James J. Gibb, husband of the petitioner and a member of the bar of this state. In addition to the alleged incompetent, her next of kin and the Attorney-General of the State of New Jersey have been joined as respondents.
An order was issued, directed to all of the defendants to show cause why the prayers of the petition should not be granted, accompanied by an ad interim restraint enjoining F. Arnault Seidler, the nearest next of kin and the trustee of the assets of the alleged incompetent, from carrying on any activities as such trustee until the further order of the court.
Answering affidavits were submitted on behalf of the respondents and F. Arnault Seidler voluntarily filed a complete accounting of the administration of his trust. No affidavits have been filed by or on behalf of the Attorney-General, *Page 326 
nor has he taken any action with respect to the order to show cause.
The application is resisted on the ground that petitioner has no standing to make such an application and that, therefore, this court is without jurisdiction to issue the writ de lunaticoinquirendo. Petitioner bases her right to bring this application on the fact that her husband, one of the affiants, acted as attorney for Mrs. Oswald's husband for many years until his death in April, 1941, and for Mrs. Oswald for several weeks thereafter. Petitioner also states that she is a friend of the alleged incompetent.
The proofs disclose, and it is admitted, that petitioner is not related to Mrs. Oswald, that they are in no way associated by contract, trust or confidence, and that the alleged incompetent has next of kin who are resisting this application as harmful to her best interests. Her closest relatives are the respondents F. Arnault Seidler and Victor B. Seidler, first cousins. The proofs show that Mrs. Oswald lived in the same household with these respondents from the age of two years until she was married. She was brought up as their sister and has always referred to each of them as "brother." In this state of facts respondents urge that Mrs. Gibb has no standing to make the application for the writ.
Notwithstanding petitioner's allegations of friendship for the person whom she is seeking to have legally declared incompetent, she is nevertheless a stranger to Mrs. Oswald in the eyes of the law. A writ de lunatico inquirendo may not be issued upon the application of a mere stranger. The Court of Chancery has no inherent jurisdiction over lunatics. Such jurisdiction as the Chancellor has is purely statutory. R.S. 3:7-35 provides:
"Except as otherwise provided by law, the question whether a person is a mental incompetent shall be determined by an inquest upon a commission to be issued out of the court of chancery and returnable thereto, and proceedings thereon shall be as heretofore practiced in proceedings de lunatico inquirendo and in the nature of de lunatico inquirendo."
The reference in this statute to the practice "as heretofore" *Page 327 
has been a part of the New Jersey statute since at least 1820.Comfort's Case (1904), 66 N.J. Eq. 6 (at p. 7);57 Atl. Rep. 426.
The Lord Chancellor held this power apart from the jurisdiction of the Court of Chancery; it is suggested that in this capacity he was the first administrative officer known to the English judicial system. In re Farrell (1893), 51 N.J. Eq. 353 (atp. 358); In re Devausney (1894), 52 N.J. Eq. 502 (at p.505); 28 Atl. Rep. 459; Ex Parte Phillips, 19 Ves. 122;Burford v. Lenthall, 2 Atkinson 553; Highmore on Lunacy
(1807), 29 ch. 11.
Demonstrating that the Lord Chancellor holds his jurisdiction as an administrator and not as the Court of Chancery, appeals from the action of the Lord Chancellor on petition for a writ delunatico inquirendo went directly to the King in Council and not to the House of Lords, as in other appeals from the Court of Chancery. Sheldon v. Fortescue, 3 P. Wms. 104; Rochfort v.Earl of Ely, 1 Br. P.C. 450; 2 Ves. Jun. 72; Stock on NonCompotes Mentis (1839), 84 Part II.
Since the Chancellor's power with respect to lunatics is based solely upon statute, it may not be extended in the same manner as the Chancellor strictissimi juris enlarges the inherent jurisdiction of the Court of Chancery whenever equity so demands it.
On November 21st, 1794, the people granted the administration over lunatics to the Chancellor, who was at that time also the Governor. (Patterson's Laws 125.) Similar to the statute deprarogaliva regis, this statute did not refer to the "Court of Chancery" but to the "Chancellor." By act of 1804 the legislature transferred from the Chancellor to the Orphans Court the power to appoint guardians after findings of lunacy on inquisition.
The statutes of 1794 and 1804 were later codified (1820) and are now in force, having been re-enacted in the revisions of 1846, 1874 and 1937. Lindsley's Case, 44 N.J. Eq. 564;15 Atl. Rep. 1; In re Devausney, supra; In re Farrell, supra; Comfort'sCase, supra; Hoffman v. Kahn 119 N.J. Eq. 171;181 Atl. Rep. 527. *Page 328 
The jurisdiction of the Chancellor to order an inquisition into the sanity of an alleged incompetent is strictly limited to the terms of this statute as "heretofore" practiced. It has never been applied so as to permit the issuance of a writ de lunaticoinquirendo upon the application of a mere stranger and it may not be so applied.
A legislative delegation of power to the Court of Chancery to determine sanity by a summary hearing without a jury has been held unconstitutional. In re McLaughlin, 87 N.J. Eq. 138;102 Atl. Rep. 439; In re Foran, 85 N.J. Eq. 288; 98 Atl. Rep. 640.
In his administration over lunatics, the Chancellor must apply even procedural rules strictly "as heretofore" in the absence of statutory modification of that procedure. Thus it has been held that the procedural limitations on the allowance of a traverse in lunacy proceedings are binding until changed by the legislature.Den v. Clark (1828), 10 N.J. Law 217, 219; Case ofCovenhoven (1830), 1 N.J. Eq. 19, 21; In re Hannah (1909),76 N.J. Eq. 237; 73 Atl. Rep. 849.
The Chancellor has refused to extend his power to issue the writ de lunatico inquirendo to new types of incompetents in the absence of a statute enlarging his jurisdiction in this respect. Thus in the Case of Vanauken (1854), 10 N.J. Eq. 186, a commission based its finding of lunacy partly on the fact that the alleged incompetent was nearly eighty years of age. On a petition for traverse upon inquisition, Chancellor Williamson held that under the New Jersey statute this ground was not a proper basis for the writ and pointed out:
"* * * Old age has evils enough, without adding to the misfortunes which usually accompany it. To deprive an old man of the control of his property, is to strip him of the only means he has left of commanding that respect and attention which is all that renders his life endurable. A court should exercise great care to see that mere old age and its attendant infirmities are not made the pretexts for establishing that unsoundness of mind which will deprive a man of his liberty *Page 329 
and his property. In England the jurisdiction of the court is more extensive. The statute 11 Geo. 4, and 1 William 4ch. 60, gives a power to issue a commission of lunacy in all cases where an individual is incapable of managing his affairs, although he be neither an idiot, nor a lunatic, nor of unsound mind, in the strict sense of these terms. * * *" (Page 195.)
Neither the English Parliament before the American revolution nor the New Jersey legislature since that time has granted to the Chancellor the power to issue a writ de lunatico inquirendo
upon the application of a mere stranger and no such practice has heretofore been countenanced. The limitation upon the Chancellor's power in this regard was first pointed out in this state in the Case of Covenhoven, supra. In that case an inquisition was held into the sanity of Covenhoven, who was found to be of unsound mind. Upon the return of this finding to the Chancellor, the attorney-in-fact of Covenhoven who was in charge of his estate petitioned the court requesting (a) that the previous writ de lunatico inquirendo be quashed and (b) that a new writ issue. The Chancellor declined to issue a new writ upon the application of the attorney-in-fact, who was considered in the eyes of the law a mere stranger to Covenhoven. Chancellor Vroom stated:
"* * * It is clear that a stranger has no right to interfere in a proceeding of this nature. He can neither sue out a commission, nor can he make himself a party to it by any application he may make to this court. * * *" (Page 21.)
No other reported instance in this state of an outright application by a stranger for the issuance of a writ de lunaticoinquirendo has been cited by counsel, nor have I found any.
In the cases of In re Hannah, supra, and In re Frankish,86 N.J. Eq. 280; 98 Atl. Rep. 395, Chancellor Walker adverted to the holding of Case of Covenhoven and recognized the principle of that case to be the law of this state. In the Frankish Case
the Chancellor stated:
"* * * A decree in lunacy is for the benefit of the *Page 330 
alleged lunatic and is for his protection and that of his estate. This is adverted to In re Farrell, supra (at p. 362). A stranger cannot sue out a commission in the nature of a writ delunatico inquirendo. In re Covenhoven, 1 N.J. Eq. 19. Only relatives who are interested in the welfare of the lunatic may do this. * * *" (Page 285.)
The same principle, namely, that the Chancellor may not issue a commission to inquire into lunacy on the application of a mere stranger in the absence of statutory enactment, has been recognized in other jurisdictions as well. Soules v. Robinson
(Ind. A.), 60 N.E. Rep. 726 (reversed on other grounds,62 N.E. Rep. 999); Jessup v. Jessup (Ind.),34 N.E. Rep. 1017; Cox v. Osage County, 103 Mo. 385; 15 S.W. Rep. 763.
In New York an application for a commission into lunacy may be obtained by a stranger but this is the result of legislative enactment. Section 2323 of the New York Code of CivilProcedure (C.P.A. § 1359) provides:
"An application for the appointment of such a committee (to inquire into competency) must be made by petition which may be presented by any person."
The same act permits an application of this kind by the overseer of the poor where no relative or other person appears to make the application. See Hughes v. Jones (1889), 116 N.Y. 67,
and O'Rourke v. Standard (1923), 198 N.Y. Supp. 632.
To the same effect is the law of Oklahoma. Section 1445 O.S.1931, 58 Okla. Stat. Annot. § 851[58-851]. Even these permissive statutes in other states are, however, strictly construed. InNed v. Robinson, 74 Pac. Rep. 2d 1156, 1158, cert. den.304 U.S. 550, re-hearing den. 305 U.S. 669, decided under the Oklahoma statute cited above, the court pointed out:
"A mere stranger or a mere busybody as some of the cases express it may not institute the proceeding but nevertheless we find from the cases that as a usual thing any person having the interest of the alleged incompetent in mind may qualify *Page 331 
sufficiently to institute the proceeding under statutes permitting the same to be filed by a `friend.'" (Page 1158.)
Petitioner relies for her right to make this application on the case of In re Rhodes (1927), 100 N.J. Eq. 370;136 Atl. Rep. 408. In that case the daughter of the alleged incompetent successfully applied for a writ de lunatico inquirendo. The jury was unable to agree on the question of sanity and the Chancellor was obliged to issue an alias writ. Thereupon the daughter apparently changed her mind and requested the court to dismiss the entire proceedings. Chancellor Walker declined to dismiss the proceedings holding that proceedings of this nature once instituted are for the benefit of the alleged incompetent and may not be dismissed on the application of any persons, including next of kin, as a matter of right. While emphasizing the fact that proceedings of this nature are purely for the benefit of the alleged incompetent, Chancellor Walker stated indicta "* * * And the commission may issue on the petition of strangers on information by the Attorney-General. See Shelf.Lun. supra * * *." (At p. 373.) The right of a mere stranger to apply to the Chancellor for a writ de lunatico inquirendo
was not before the court in In re Rhodes, supra. The decision of Chancellor Walker in that case neither reverses, modifies nor mentions the holding of Case of Covenhoven, supra, which remains the law of this state. Chancellor Walker had already expressed his agreement with that principle in In re Hannah,supra, and in In re Frankish, supra. The dicta of In reRhodes, supra, may not be considered as authoritative or as modifying in any manner or to any extent the rule the Chancellor has no power to issue a writ de lunatico inquirendo on the application of a mere stranger.
Petitioner relies, also, on Warker v. Warker (1930),106 N.J. Eq. 499; 151 Atl. Rep. 274. The question here presented was not before the court in that case and there is nothing in the opinion of the court to alter the general rule as stated above.
In the proceedings before me it also is alleged that Louise *Page 332 
G. Oswald, the alleged mental incompetent since August 23d 1941, has been confined, as a mental case, in Essex County Hospital at Cedar Grove (Overbrook), a county institution for the care and custody of such cases; that she was committed to that institution on the application of F. Arnault Seidler; that while Mrs. Oswald's mental condition was questionable and with full knowledge thereof, Seidler procured from her a purported conveyance of all of her property, the instrument reciting that the conveyance was made "in trust," but the terms thereof giving to the grantee virtually unlimited powers with regard to the management and disposition of the property during Mrs. Oswald's lifetime, together with the right to keep the same, or to dispose of it by (his) will at her death.
Petitioner contends that the court, having had these facts brought to its attention, is in the exercise of a sound discretion, called upon to protect the woman thus shown to be incompetent by formally inquiring into her alleged incompetency, to the end that, upon the adjudication of such incompetency, a guardian may be appointed for her and her estate, with the ultimate view of recovering the property of the possession of which it is said she has been unlawfully stripped.
While this matter was before me awaiting decision, the solicitor for the petitioner as "next friend of Louise G. Oswald" presented a bill of complaint to Vice-Chancellor Bigelow, to set aside said conveyance, and was by order dated August 13th, 1942, appointed as next friend of Louise G. Oswald to bring suit to set aside said conveyance. Thus there is before me only the question of whether petitioner as a stranger may institute these proceedings.
I conclude that the Chancellor has no power to order a lunacy commission upon the application of a mere stranger. An order may be entered in accordance with this opinion. *Page 333